[No. A083931. First Dist., Div. Two. June 15, 1999.]

THE PEOPLE, Plaintiff and Appellant, v.
LAWRENCE ALFORD DRAUT, Defendant and Respondent.

## COUNSEL

Bill Lockyer, Attorney General, and Mia Anna Mazza, Deputy Attorney General, for Plaintiff and Appellant.

Philip McGough, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**HAERLE, Acting P. J.—**

## I. INTRODUCTION

On May 23, 1997, Lawrence Alford Draut (Draut) pleaded no contest to six of fifty-three counts charging that he fraudulently failed to report and remit state sales and unemployment insurance taxes between January 1, 1991, and January 19, 1996. Under a plea agreement, the other 47 counts were dismissed. On August, 4, 1998, the court sentenced Draut to seven years and four months in prison. Additionally, under Penal Code section 1202.4,[1] the court ordered Draut to pay $1,145,186.60 in restitution. At a subsequent sentencing hearing on August 5, the court, sua sponte, reduced the award to $150,000. The People appeal, arguing that the trial judge erred in reducing the award. We agree. Therefore, we reverse and remand with instructions to order restitution in the amount properly ordered on August 4, 1998.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Draut, as sole proprietor, operated a retail computer business in Santa Rosa and, at times, in Napa. On March 8, 1996, during consultation with a Santa Rosa police officer on another matter, Draut revealed that, for the five years from approximately 1991 through 1995, he had failed to pay state taxes connected with the business. The officer referred the case to the State Board of Equalization (BOE). BOE investigators determined that Draut had failed to remit over $1 million in sales tax collected from customers. With costs, the total loss to BOE came to about $1,120,000. Employment Development Department (EDD) investigators determined that, for brief intervals during that period, Draut had also failed to remit unemployment insurance taxes withheld from his employees' paychecks. EDD determined the loss, including investigative costs, to be around $37,000.

On September 13, 1996, the Sonoma County District Attorney filed a 43-count complaint against Draut, alleging that (1) he failed to pay these moneys, in violation of Revenue and Taxation Code sections 7152, subdivision (a) and 7153.5, (2) he aided and assisted in tax evasion in violation of Revenue and Taxation Code section 6071, (3) in doing so he committed grand theft, in violation of section 487, subdivision (a), and (4) the amount taken in that theft was greater than $150,000, in violation of section 12022.6, subdivision (b). On December 4, 1996, the same office charged Draut with

---

[1] All statutory references herein are to the Penal Code, unless otherwise noted.

five counts each of unemployment insurance tax evasion and of failing to withhold or pay over unemployment insurance tax, in violation of Unemployment Insurance Code sections 2117.5 and 2118.5, respectively. The various charges under each statute were substantively the same; each count covered a different tax quarter.

On May 23, 1997, Draut entered into a plea agreement under which he pleaded no contest to six of the counts against him, and the remaining counts were dismissed. With respect to the dismissed counts, the agreement included *Harvey* waivers.[2]

On August 4, 1998, the court sentenced Draut to seven years and four months in state prison. This sentence consisted of the two-year middle term for the first offense to which he pleaded no contest, five consecutive two-year sentences, which under the sentencing statute[3] translated to one-third of the base term or eight months each, and a two-year enhancement for taking property of a value in excess of $150,000 (§ 12022.6, subd. (b)). The court also ordered Draut to pay restitution of $1,145,186.60, pursuant to section 1202.4 (the restitution statute). That amount represented the total estimated loss suffered by the victims of Draut's crimes, the BOE and the EDD.

On August 5, 1998, the parties came before the court again. The People sought an $11,000 increase in the restitution award, claiming that the probation department had calculated it erroneously. Instead, the trial judge responded by, on his own motion, reducing the restitution award to $150,000, stating that the full award would burden Draut forever, and would restrict him from pursuing a productive life after he served his jail sentence.

The People timely filed this appeal on August 6, 1998.

## III. DISCUSSION

In reducing the restitution award, Judge Passalacqua, who had presided over Draut's trial and sentencing, stated, "In fact he's going to do seven years and four months. The fact that the Court ordered restitution of over a

---

[2]"While '[i]mplicit in . . . a plea bargain . . . is the understanding . . . that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count,' such adverse sentencing consequences may properly be imposed if there was agreement to the contrary. This 'contrary agreement' proviso is what has since been called a '*Harvey* waiver.'" (*People* v. *Beck* (1993) 17 Cal.App.4th 209, 215 [21 Cal.Rptr.2d 250], quoting *People* v. *Harvey* (1979) 25 Cal.3d 754, 758 [159 Cal.Rptr. 696, 602 P.2d 396].)

[3]Section 1170.1, subdivision (a).

million dollars yesterday is almost preposterous. . . . [¶] Once the man pays his dues to society for his indiscretions, then at that point he should be at least in a position to start life and live the rest of it in a normal fashion. And with a burden of $1,100,000 on his back, Mr. Draut is never going to get out from under the sentence of this Court. [¶] This Court feels that the interest of justice warrants that a sum far less than $1 million be imposed. I thought about that last evening. Just like the man who gets out of jail, serves his time in prison and now wants to go to work and can't go to work because the Department of Motor Vehicles wants to punish him further by taking his driver's license. Things like that just are preposterous. They're not a deterrent to crime. I have yet to meet a dope salesman who says, 'I better not sell any, because the Department of Motor Vehicles wants my driver's license.' [¶] Well, this man is in that same position, so to speak. This Magistrate will order restitution. And if those fellows from the Board of Control want to appeal it, let them go. I'm cutting it down to a hundred fifty thousand dollars." At the close of the judge's remarks, the People objected. Defense counsel was silent.

██ Subdivision (f) of the restitution statute states that, where a crime results in an economic loss to the victim, the court *shall* order the person convicted of that crime to pay *full restitution* to the victim for his loss, unless the trial court finds "compelling *and* extraordinary" reasons to order a lesser award.[4] (§ 1202.4, subd. (f), italics added; see also Cal. Const., art. I, § 28, subd. (b); 3 Witkin, Cal. Criminal Law (2d ed., 1999 supp.) Punishment for Crime, § 1325A, subd. (e), p. 45 ["[t]o the extent possible, the restitution order must be prepared by the sentencing court . . . and must be sufficient to fully reimburse the victim for every economic loss resulting from the defendant's criminal conduct"].)

The trial "court's allocation of restitutionary responsibility must be sustained unless it constitutes an abuse of discretion or rests upon a demonstrable error of law." (*In re S.S.* (1995) 37 Cal.App.4th 543, 550 [43 Cal.Rptr.2d 768] [finding punitive and antirecidivist rationale behind restitution limits trial court's discretion to award less than full restitution]; see also *People* v. *Thygesen* (1999) 69 Cal.App.4th 988, 992 [81 Cal.Rptr.2d 886] [concluding trial court's discretion is broad, but not unlimited]; *People* v. *Ortiz* (1997) 53 Cal.App.4th 791, 800 [62 Cal.Rptr.2d 66] [holding that

---

[4]The relevant portion of the restitution statute states "(f) In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims . . . . [¶] . . . [¶] (3) To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as a result of the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f).)

the constitutional basis of the restitution statute requires that "the court must decide the amount of the loss on grounds [that] will withstand review for abuse of discretion"]; *People v. Dalvito* (1997) 56 Cal.App.4th 557, 562 [65 Cal.Rptr.2d 679] [holding that an abuse of discretion occurs when a restitution award is made without a factual or rational basis].) A trial court abuses its discretion when it determines an award amount using other than "a rational method that could reasonably be said to make the victim whole" or when an award is arbitrary or capricious. (*People v. Thygesen, supra,* 69 Cal.App.4th at p. 992.) The restitution statute requires that the trial court set forth its reasoning in the record when exercising this discretion. (§ 1202.4, subd. (f).) ■ Examining the record before us here, we find that the trial court committed a demonstrable error of law and abused its discretion.

Subdivision (g) of the restitution statute indicates specifically that the defendant's "inability to pay" is not an extraordinary and compelling circumstance that would justify a court ordering less than full restitution. (§ 1202.4, subd. (g).) To permit this would ignore the fact that restitution is aimed at reversing the harm to the victim to the extent possible. (*People v. Moser* (1996) 50 Cal.App.4th 130, 135 [57 Cal.Rptr.2d 647].) Also, if the inability to pay were considered an extraordinary circumstance, the "exception" would swallow the rule. Every defendant who would suffer hardship in paying a restitution award, i.e., almost every defendant, would be an "extraordinary case" and would therefore be eligible for a reduced award. Specifically to avoid such absurd outcomes, the Legislature added subdivision (g) in 1994. (§ 1202.4, subd. (g), added by Stats. 1994, ch. 1106, § 3.)

It is evident from the trial court's statement, quoted in full above, that the underlying reason for the court's action was a belief that the defendant would be unable to pay restitution in the amount required. This is explicitly prohibited by the restitution statute. Thus, the trial court, in reducing the award, committed a demonstrable error of law because it based its order on the defendant's inability to pay, in violation of section 1202.4, subdivision (g).

Even if not based on a statutorily impermissible inability to pay theory, the trial court's reduction of the restitution award constituted an abuse of discretion because the circumstances here, while perhaps compelling to the trial court, were not extraordinary. In *People v. Rowland* (1997) 51 Cal.App.4th 1745, 1752 [60 Cal.Rptr.2d 351], this court, while finding that the trial court retains discretion in fixing the award amount, nonetheless rejected the concept that the results of a trial court's " 'weighing and balancing the equities of imposing restitution' " could constitute extraordinary and compelling reasons for imposing less than full restitution. Similarly, here the trial court determined the award amount by balancing the loss

suffered by the victims against the impact of a restitution requirement on Draut. This was an impermissible exercise of the trial court's powers.

Furthermore, in determining the reduced amount, the trial court did not use the required rational method, and whatever method it did use was not made evident in the record as the statute requires. (*People* v. *Thygesen*, *supra*, 69 Cal.App.4th at p. 992; § 1202.4, subd. (f).) Respondent argues that the trial court considered the defendant's "prospects for rehabilitation and a law-abiding life," as well as a statement from a long-time friend of the defendant and the probation report, and thus its exercise of discretion was not arbitrary. The trial court's statement on the record, however, is completely void of any quantitative or factual reason for reducing the award to $150,000. We find no evidence in the record explaining why that arbitrary sum, and no other amount, equal to or less than the original $1,145,000, should be ordered.

Nor can the reduced amount be said to come anywhere near reasonably making the victim whole as the statute requires. (§ 1202.4, subd. (f); *People* v. *Thygesen*, *supra*, 69 Cal.App.4th at p. 992.) The evidence supporting the determination that BOE and EDD lost $1,145,186.60 due to Draut's illegal activity was uncontroverted. Thus, there was no question as to the amount required to make the victim whole. Awarding a lesser amount, absent a compelling and extraordinary reason stated in the record, or a rational method aimed at making the victim whole, was an abuse of discretion.

## IV. DISPOSITION

The order of the trial court reducing the restitution award is reversed, and the case is remanded for entry of a restitution order awarding the full amount lost by the victims of Draut's crimes, to wit $1,145,186.60.

Lambden, J., and Ruvolo, J., concurred.