[No. A089186. First Dist., Div. Five. Oct. 30, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
BELQUIS AMIN, Defendant and Appellant.

**COUNSEL**

James P. Collins for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

JONES, P. J.—The trial court ordered appellant, Belquis Amin, to pay restitution to an insurance carrier which she had defrauded. She now appeals claiming the court abused its discretion when it ordered her to pay restitution. We disagree and will affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was a waitress at the Hilton Hotel located in Pleasanton. On March 21, 1994, while working at the hotel, appellant slipped on a lemon peel and fell. Appellant then submitted a workers' compensation claim for the injuries she sustained. Fireman's Fund Insurance Company was the insurance carrier for the hotel.

Appellant was injured in the accident, although the extent of her injuries is unclear. The agreed medical examiner, Dr. Ravi Nayak, examined appellant in September 1995 and concluded she was making complaints that were far in excess of what he would expect given the injuries she had sustained. He suspected "symptom magnification." Dr. Hank Sigal, a psychiatrist who evaluated appellant the following year, agreed. He said that "[v]arious aspects of the history and record review suggest that deliberate symptom exaggeration is a factor here . . . . At present, I cannot identify sufficient psychiatric factors preventing Ms. Amin from returning to work."

Appellant however, continued to say that she had suffered serious and debilitating injuries. As her personal physician, Dr. Jay Patel, explained in his October 1996 notes, "Patient is worse than ever before. She has severe pain in her lower back . . . . She is not able to function at all at home. She is not able to even walk every day. She cannot drive."

Fireman's Fund thought appellant might be exaggerating her injuries, so it undertook an investigation. A surveillance video taken on September 14, 1996, showed appellant driving children to school, walking in high heels, and then driving home again. Another videotape, taken on September 27, 1996, was even more incriminating. We quote from the summary, "At 7:41 a.m. [s]uspect was observed leaving her home carrying a briefcase and walking without any apparent restrictions. Suspect then drove to an associate's house and entered the apartment. Suspect was driven by her associate to a medical appointment. [¶] At 9:55 a.m. [s]uspect was observed exiting the vehicle and walking into the [doctor's] office. Suspect appeared to be severely injured and was unable to walk without the use of a 'walker' and without the assistance of her associate. [¶] At 10:57 a.m. [s]uspect exited the

doctor's office limping severely, using a cane and requiring the assistance of her associate. Again, her demeanor was extremely exaggerated and she took several minutes to walk even a short distance while her associate drove the car to the entrance of the medical office and helped her into the vehicle. [¶] At 11:46 [s]uspect was next observed at the associate's apartment where she was observed to walk without restriction down the stairs of the apartment carrying a briefcase and declining the use of a handrail. Suspect was observed to enter her own vehicle and drive away from the location."

Thereafter, Dr. Nayak and Dr. Patel viewed the surveillance videotape. Dr. Nayak responded, "In view of clear evidence of malingering, as well as deliberate misleading of examiners by Ms. Amin, I do not believe she is in need of additional evaluation or surgical treatment. Ms. Amin's condition therefore is permanent and stationary for rating purposes. [¶] Because of malingering demonstrated by Ms. Amin, her subjective report of symptoms is not an accurate representation of her subjective disability . . . ."

Appellant's personal physician, Dr. Patel, was more charitable. He responded, "[appellant] may have been exaggerating some of the symptoms on 9/28/96 [*sic*] to impress on Dr. Nayak. Considering what she has gone through from good wage earner for the family and now almost to the point of bankruptcy, I would not be surprised that somebody would try to exaggerate their symptoms."

In April 1998, appellant underwent back surgery. It is unclear whether the problems appellant was experiencing were related to the injury she sustained while working.

Based on these facts, a complaint was filed charging appellant with 12 criminal violations.[1] The case was resolved through negotiation. Appellant pleaded guilty to a single count of violating Insurance Code section 1871.4, subdivision (a)(2)—presenting a false or fraudulent statement in support of a claim for workers' compensation insurance. In exchange the prosecutor agreed appellant would receive probation and that the remaining counts would be dismissed. As part of the plea bargain, appellant expressly agreed to pay restitution on all the counts, including those that were being dismissed.

On May 27, 1999, the court suspended the imposition of sentence and placed appellant on probation for a term of five years. Subsequently, and after further briefing, the court ordered appellant to pay restitution to Fireman's Fund in the amount of $29,983. This appeal followed.

---

[1]Several of the counts arose out of claims appellant had made concerning a car accident. Those counts are not at issue in the present appeal.

## II. DISCUSSION

Appellant raises two issues on appeal. First she contends the trial court abused its discretion when it ordered her to pay restitution because she did, in fact, suffer a legitimate industrial injury. Under these circumstances, appellant argues, Fireman's Fund was "not entitled to any restitution whatsoever."

We reject this argument for two reasons. First appellant agreed to pay restitution as part of her plea bargain. As the court noted at the change of plea hearing, "[The Court] Ms. Amin, you will be required to pay restitution as to all counts charged in this case even those being dismissed. [¶] [Appellant] Yes, I have no choice." ▮ Having agreed to pay restitution as part of her plea bargain, appellant cannot validly challenge the order requiring her to pay restitution. (See *People v. Hester* (2000) 22 Cal.4th 290, 295 [92 Cal.Rptr.2d 641, 992 P.2d 569]; *People v. Nguyen* (1993) 13 Cal.App.4th 114, 122-123 [16 Cal.Rptr.2d 490].)

Appellant contends she should be permitted to challenge the restitution order because the issue of restitution was "reserved" by the court for determination at a later hearing. It is true that the judge who took appellant's plea did not decide the amount that appellant would be required to pay, and instead "reserved" the issue for decision later. However what was "reserved" was a decision on the *amount* appellant would be required to pay. The *fact* that appellant would be required to pay restitution was an express element of the plea bargain. As the court explained during the change of plea hearing, "you will be required to pay restitution. That amount is going to be determined by the *sentencing judge.*"

We conclude appellant cannot validly challenge the court's decision to require her to pay restitution.

Furthermore, even if we were to ignore the procedural barrier, appellant's argument is unpersuasive. ▮ As we have noted, appellant contends the trial court should not have ordered her to pay *any* restitution because she did in fact suffer a legitimate industrial injury. While that may be true, the extent of that injury was in serious doubt. The videotapes showed appellant had grossly exaggerated her injuries. Dr. Patel agreed. Furthermore, the record shows Fireman's Fund paid $43,486 to appellant for temporary and permanent disability, rehabilitation, and medical expenses. Of that amount, the

trial court ordered appellant to repay only $9,822.[2] This represented the amount Fireman's Fund had paid to appellant after September 27, 1996, the date of the pivotal videotape and the date of appellant's crime.

A trial court is granted the authority to determine the amount a defendant must pay in restitution and its ruling will be reversed on appeal only where the court abused its discretion. (*People v. Draut* (1999) 73 Cal.App.4th 577, 581 [86 Cal.Rptr.2d 469].) We conclude that ordering appellant to repay less than one-fourth of the benefits she had received was reasonable given the evidence which showed she had significantly exaggerated her injuries. The court did not abuse its discretion.

■ Appellant's second argument is no more persuasive. She contends the trial court abused its discretion when it ordered her to pay restitution because "the workers['] compensation appeals board has sole jurisdiction to decide those claims." We disagree.

Appellant bases her argument on Labor Code section 5300 which states that the Workers' Compensation Appeals Board generally has jurisdiction over claims for compensation.[3] However, appellant fails to acknowledge that thestatute she violated specifically states that the trial court is authorized to order a defendant to pay restitution.

Insurance Code section 1871.4, subdivision (a)(2) states it is unlawful to "Present or cause to be presented any knowingly false or fraudulent written or oral material statement in support of . . . any claim for compensation for the purpose of obtaining . . . any compensation . . . as defined in Section 3207 of the Labor Code." Section 3207 of the Labor Code states, " 'Compensation' means compensation [under the workers' compensation law] and includes every benefit or payment conferred by Division 4 upon an injured employee, including vocational rehabilitation . . . without regard to negligence." Insurance Code section 1871.4, subdivision (b) goes on to state, "Every person who violates subdivision (a) shall be punished by imprisonment in county jail for one year, or in the state prison . . . . *Restitution shall be ordered, including restitution for any medical evaluation or treatment*

---

[2]The remainder of the restitution order covered attorney fees, investigation costs, and court reporter fees. Appellant does not directly challenge the court's authority to order restitution for those costs.

[3]Labor Code section 5300 states in part, "All the following proceedings shall be instituted before the appeals board and not elsewhere, except as otherwise provided in Division 4: [¶] (a) For the recovery of compensation, or concerning any right or liability arising out of or incidental thereto. [¶] (b) For the enforcement against the employer or an insurer of any liability for compensation imposed upon the employer by this division in favor of the injured employee, his or her dependents, or any third person."

*services obtained or provided. The court shall determine the amount of restitution and the person or persons to whom the restitution shall be paid."* (Italics added.)

Reading these statutes together, it is clear the Legislature granted the trial court the authority to order a defendant who has violated Insurance Code section 1871.4, subdivision (a)(2) by presenting a false or fraudulent statement in support of a claim for workers' compensation, to pay restitution. To the extent the provisions of Insurance Code section 1871.4, subdivision (b) conflict with the more general provisions of Labor Code section 5300, the more specific directives of the former section control. (See *Woods v. Young* (1991) 53 Cal.3d 315, 324 [279 Cal.Rptr. 613, 807 P.2d 455].)

We conclude the trial court had the authority to order appellant to pay restitution.

### III. DISPOSITION

The order requiring appellant to pay restitution is affirmed.

Stevens, J., and Rivera, J.,* concurred.

---

[8]Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, *section 6 of the California Constitution.*