[No. A110355. First Dist., Div. Five. Dec. 22, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH BOUDAMES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

[*]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II., III., and IV. of Background and parts I., II., and III. of Discussion.

## COUNSEL

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JONES, P. J.**—Joseph Boudames appeals his conviction by jury verdict of two counts of failing to pay sales taxes (Rev. & Tax. Code, § 7153.5) and one count of bribery (Pen. Code, § 67.5, subd. (b)). He contends the bribery conviction must be reversed because it was the result of entrapment, there is insufficient evidence to support the failure-to-pay convictions, and the restitution order incorrectly includes statutory penalties. In the published portion of our opinion, we address whether a penalty assessment imposed under Penal Code section 1202.4, subdivision (a)(2) or a penalty imposed under Revenue and Taxation Code 6591 may be included in victim restitution ordered pursuant to Penal Code section 1202.4, subdivision (f).[1]

### BACKGROUND

### I. *Overview*

Appellant was the president of a retail computer store in San Francisco. When an auditor from the California Board of Equalization (Board), conducting a sales and use tax audit of the business, informed appellant he had a possible sales tax arrearage of $160,000, appellant implicitly offered the auditor a bribe if he would submit an audit report showing a substantially lower arrearage. Under a clandestine investigation supervised by the Department of Justice, the auditor ultimately agreed with appellant to submit a bogus audit showing a $7,000 arrearage, in exchange for personally receiving a payment of $10,000. Following the exchange, appellant's offices were searched, numerous records were seized, and he was charged with and found guilty of bribery and two felony counts of underreported taxes of more than $25,000 for a consecutive 12-month period: April 1997 to March 1998 and April 1998 to March 1999.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

II.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

I.–III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV. *Victim Restitution*

Appellant contends the amount he was ordered to pay as victim restitution is erroneous because the amount includes statutory penalties.

#### a. *Sentence*

According to the "victim's statement" in the presentence report, the Board submitted "restitution" consisting of, inter alia, "$173,821.40—(tax, interest, and penalties) to date for Criminal audit period," i.e., the two 12-month periods that constituted the bases of counts one and two.[9] The $173,821.40 figure was not further broken down into the amounts of the outstanding taxes themselves, interest, and penalties. The presentence report recommended that appellant, "pursuant to Section 1202.4 of the Penal Code," pay a $600 restitution fine to the restitution fund and restitution to the victim of the entire amount of victim restitution claimed by the Board. (See fn. 9, *ante.*) The presentence report did not identify the statutory basis of the "penalties."

At sentencing the court ordered appellant to pay $600 to the restitution fund and $173,821.40 "in tax, interest and penalties" to the Board. It ordered a hearing regarding the Board's claimed investigative costs because appellant challenged these costs, after which it would issue a separate order with respect to reimbursement for those costs.[10]

---

*See footnote, *ante*, page 45.

[9] The full amount of restitution submitted by the Board to the Probation Department was $1,693,119.50. It consisted of $1,609,299.50 to the Board ($185,102.50 in investigative costs, $1,250,375.64 in tax, interest, and penalties to date for the civil audit period, and $173,821.40 to date for the criminal audit period) and $83,820.00 to the Department of Justice for investigative costs. At sentencing the People acknowledged that the amounts for the civil audit period were not part of the criminal case.

[10] Assuming it eventually issued, the court's order regarding the investigative fees is not in the instant appellate record.

The abstract of judgment, "per PC 1202.4(f)," imposes a $600 "restitution fine" to the restitution fund and "restitution to [the Board] for $173,821.40 plus 10 percent administrative fee."

b. *Statutory Scheme*

■ Section 1202.4, subdivision (a)(1) states: "It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." Section 1202.4 further provides that a convicted defendant shall pay a fine in the form of a penalty assessment, in accordance with section 1464 (§ 1202.4, subd. (a)(2))[11]; a restitution fine between $200 and $10,000, payable to the restitution fund in the State Treasury (§ 1202.4, subds. (a)(3)(A), (b)–(e)); and restitution to the victim (§ 1202.4, subds. (a)(3)(B), (f)).

Section 1202.4, subdivision (f) states: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim . . . in an amount established by court order, based on the amount of loss claimed by the victim . . . ." It further provides that, to the extent possible, "the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to . . . . [¶] (A) Full or partial payment for the value of stolen or damaged property. . . . [¶] . . . [¶] (G) Interest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court." (§ 1202.4, subd. (f)(3).)

Neither a restitution fine, imposed under section 1202.4, subdivisions (a)(3)(A) and (b)–(e), nor victim restitution, imposed under section 1202.4, subdivisions (a)(3)(B) and (f), can serve as the underlying fine upon which a penalty assessment can be imposed under section 1202.4, subdivision (a)(2) and section 1464. (See respectively *People v. Allen* (2001) 88 Cal.App.4th 986, 988 [106 Cal.Rptr.2d 253]; *People v. Dorsey* (1999) 75 Cal.App.4th 729, 731 [89 Cal.Rptr.2d 498].)

---

[11] Section 1464, subdivision (a) provides that "there shall be levied a state penalty, in an amount equal to [$10.00] for every [$10.00] or fraction thereof, upon every fine, penalty or forfeiture imposed and collected by the courts for criminal offenses . . . ." After the court determines the amount due, the clerk of the court shall collect the penalty and submit it to the county treasury. A portion shall be deposited in appropriate county funds and a portion shall be transmitted to the state treasury, to be deposited in the state penalty fund. (§ 1464, subd. (e).)

### c. *Analysis*

Appellant does not dispute that his unpaid taxes and interest thereon constitute economic losses to the Board, for which it may be compensated in a victim restitution order pursuant to section 1202.4, subdivision (f).[12] He argues that victim restitution is different from and does not encompass any statutory monetary penalties to which a defendant may be subject. We agree.

■ Statutes are to be interpreted by ascertaining the Legislature's intent in enacting them. (*People v. McHenry* (2000) 77 Cal.App.4th 730, 732 [91 Cal.Rptr.2d 877].) The first step in making this determination is to scrutinize the statute's actual words, giving them their plain and commonsense meaning. (*Id.* at pp. 732, 733.) If the language is clear and unambiguous, there is no need for construction. (*Ibid.*)

■ Section 1202.4 could not set forth its intent regarding victim restitution any more specifically or plainly: Crime victims who incur "any economic loss" as a result of the crime shall receive restitution for that loss from the defendant. (§ 1202.4, subds. (a)(1), (f).) Subdivision (f)(3) "include[s] but [is] not limited to" 11 itemized economic losses for which restitution is available. "Penalties" are not included among the specified enumerated economic losses.

Section 1202.4, subdivision (f)'s catchall phrase "but not limited to," when read in conjunction with the statute as a whole, does not manifest a legislative intent that penalties are a recognizable item of victim restitution. As we explain, penalties are addressed separately from a victim's "economic loss." Words of a statute are to be construed in context; different provisions relating to the same subject matter are to be harmonized if possible. (*People v. McHenry, supra*, 77 Cal.App.4th at p. 733.) Section 1202.4 specifically provides elsewhere, in subdivision (a)(2), for the payment of penalties following conviction. The enactment of discrete subdivisions for the payment of a fine in the form of a penalty assessment to the county treasurer (§§ 1202.4, subd. (a)(2), 1464) and the payment of restitution directly to the victim (§ 1202.4, subd. (f)) readily manifests a legislative intent to segregate and distinguish a "penalty assessment" from "victim restitution."

■ Additionally, to deem a "penalty" an item of a crime victim's economic loss is contrary to the plain meanings of "penalty," "economic loss," and "restitution" and contravenes our obligation to read statutes in a commonsense fashion. (*People v. Dorsey, supra*, 75 Cal.App.4th at

---

[12] Appellant also does not dispute the imposition of a $600 restitution fine to be paid to the state restitution fund, even though the abstract of judgment incorrectly identifies section 1202.4, subdivision (f) as the authority for the fine, rather than subdivisions (a)(3)(A) and (b)–(e).

pp. 736–737.) A penalty is commonly understood as "the suffering, in person, rights, or property, that is annexed by law or judicial decision to the commission of a crime or public offense." (Merriam-Webster's 11th Collegiate Dict. (2004) p. 915.) It is imposed as punishment on a wrongdoer for the wrongful act, and it is suffered by the wrongdoer. On the other hand, the economic loss to which section 1202.4, subdivision (f) refers is suffered by the victim. It is the monetary value placed on the thing or things the victim had, e.g., personal goods, or anticipated having, e.g., future wages, when the wrongful act occurred and of which he or she was deprived as a result of the wrongdoer's act. Because the victim did not possess, or expect to possess, a penalty at the time of the wrongful act, he or she could not have lost it as a result of the act. Restitution is commonly understood as "an act of restoring or a condition of being restored . . . (a) a restoration of something to its rightful owner (b) a making good of or giving an equivalent for some injury." (Merriam-Webster's 11th Collegiate Dict., *supra*, at p. 1062.) It obligates the defendant wrongdoer to restore to the victim the value of those things he or she was deprived of by the wrongful act. Therefore, in making restitution to the victim, i.e., restoring the monetary value of the things the victim lost, the defendant is not restoring a penalty to the victim.

■ Citing language in *People v. Crow* (1993) 6 Cal.4th 952, 957 [26 Cal.Rptr.2d 1, 864 P.2d 80], and subsequent cases that describes restitution as having a deterrent and rehabilitative objective, respondent argues the court did not err in awarding restitution for statutory penalties. These cases are inapposite. At issue in *Crow* was whether a county department of social services was entitled to victim restitution for welfare fraud even though it was not a natural person. (*Id.* at pp. 954, 956–957.) In holding that a government agency was so entitled, *Crow* observed that " 'the concept of restitution embodies not only the notion that people who suffer loss as a result of criminal activity should be compensated for those losses . . . , but also a perception of the value of restitution as a "deterrent to future criminality" . . . , and "to rehabilitate the criminal." . . . Both aims are furthered by imposing a restitution condition in appropriate cases whether or not the victim is an individual. We therefore agree with the dictum that "[t]he government may be the beneficiary of [restitution] if it has incurred actual loss due to the crime, as in the instance of tax evasion or theft of government property . . . ." ' " (*Id.* at p. 957, citations omitted.) Nothing in *Crow*'s observation that victim restitution may serve to deter and rehabilitate the defendant as well as to indemnify the victim can reasonably be read to transmogrify a statutory penalty the defendant is obligated to pay as a consequence of his conviction into an economic loss of the victim. As observed in *People v. Bernal* (2002) 101 Cal.App.4th 155, 161–162, 168 [123 Cal.Rptr.2d 622], while victim restitution may serve the additional objectives

of deterrence and rehabilitation, those objectives are served by the substantial restitution fine requirement of section 1202.4, subdivision (b).

Citing *People v. Draut* (1999) 73 Cal.App.4th 577 [86 Cal.Rptr.2d 469], respondent also argues that because the Board is statutorily authorized by Revenue and Taxation Code section 6591 to collect penalties for the failure to report and pay sales taxes, the trial court here had the statutory power to award such penalties as restitution.[13] We reiterate that a penalty imposed on a wrongdoer for wrongful acts, in this case a person who has not made a timely report and payment of sales tax, is not an economic loss to the victim of those wrongful acts. Nor does *Draut* support respondent's argument that a court has statutory power to award penalties as restitution. In *Draut* the defendant was guilty of fraudulently failing to report and remit sales and unemployment insurance taxes. (73 Cal.App.4th at p. 579.) The losses of the victims, Board of Equalization and Employment Development Department, were comprised of unpaid taxes and investigative costs and totaled approximately $1,157,000. (*Ibid.*) The trial court reduced the amount to $150,000 based on the defendant's inability to pay. *Draut* reversed, holding the reduction was an abuse of discretion, because a criminal defendant is required under section 1202.4, subdivision (f), to make full restitution to the victim absent compelling and extraordinary reasons, and, by statute (§ 1202.4, subd. (g)), inability to pay is not a compelling or extraordinary circumstance. (*Draut, supra,* 73 Cal.App.4th at p. 582.) *Draut* also observed that the reduced amount came nowhere near reasonably compensating the victims for the amount of their undisputed losses. (*Id.* at p. 583.) The only payments at issue in *Draut* were for victim restitution; it makes no mention of penalties.

■ A court has broad discretion in fixing a restitution order, but it abuses that discretion if the order rests on a demonstrable error of law. (*People v. Draut, supra,* 73 Cal.App.4th at p. 581; *People v. Thygesen* (1999) 69 Cal.App.4th 988, 993 [81 Cal.Rptr.2d 886].) ■ Because statutory penalties are not, as a matter of law, an item of victim restitution, the court here erred in including them in its victim restitution order.

## DISPOSITION

The victim restitution order is reversed and remanded with directions to calculate a restitution order based only on the economic losses of the Board

---

[13] Revenue and Taxation Code section 6591, subdivision (a) states, in pertinent part: "Any person who fails to pay any tax . . . required to be collected and paid to the state . . . within the time required[,] shall pay a penalty of 10 percent of the tax or amount of the tax, in addition to the tax or amount of tax, plus interest at the modified adjusted rate per month . . . from the date on which the tax or the amount of tax required to be collected became due and payable to the state until the date of payment."

of Equalization. The clerk of the superior court shall prepare and deliver to the Department of Corrections an amended abstract of judgment consistent with the newly calculated order. In all other respects the judgment is affirmed.

Simons, J., and Bruiniers, J.,[*] concurred.

A petition for a rehearing was denied January 18, 2007, and appellant's petition for review by the Supreme Court was denied April 11, 2007, S149689. George, C. J., did not participate therein.

---

[*]Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.