57 Cal.Rptr.3d 233 (2007)
149 Cal.App.4th 581
In re IMRAN Q., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Imran Q., Defendant and Appellant.
No. B188613.
Court of Appeal of California, Second District, Division Eight.
April 9, 2007.
As Modified April 18, 2007.
*234 Anne E. Fragasso, San Diego, for Defendant and Appellant.
Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Kenneth N. Sokoler and Marc E. Turchin, Deputy Attorneys General, for Plaintiff and Respondent.
RUBIN, J.
Imran Q. appeals from the juvenile court's order that he pay $17,958.13 in restitution to Joseph Iaquinto. We remand this matter to the juvenile court for it to recalculate the restitution amount.

FACTS AND PROCEDURAL HISTORY
In April 2003, then 16-year-old appellant Imran Q. fled from a car accident in which he injured Joseph Iaquinto. Appellant later admitted in juvenile court to one count of hit and run with an injury and one count of hit and run with property damage. The court declared appellant a ward of the court and sentenced him to home on probation. It also ordered him to pay $57,499.74 in restitution to Iaquinto for his economic losses, consisting of medical expenses, property damage, and lost income.[1]
Appellant eventually settled Iaquinto's personal injury lawsuit against him for $100,000, the policy limit of appellant's insurance coverage.[2] Iaquinto's attorney received $29,229.13 in fees and costs off the top of the settlement, meaning Iaquinto netted $70,770.87 from his lawsuit. Iaquinto thereafter moved to recover as further restitution the fees and costs he paid to his attorney to achieve the settlement. In addition, Iaquinto asked the court to award him the $2,000 he owed to the attorney *235 handling his motion for additional restitution.
The court concluded Iaquinto's total economic losses from the car accident were $88,728.87, an amount the court apparently reached by adding the $29,229.13 in fees and costs from the settlement and the $2,000 for the restitution hearing plus Iaquinto's initial economic losses of $57,499.74. Noting that Iaquinto's net recovery from his settlement with appellant was $70,770.87, the court found Iaquinto had not been compensated for the $17,958 difference between his $88,728.87 in economic losses and $70,770.87 in net settlement proceeds. The court therefore ordered appellant to pay Iaquinto $17,958.13 in additional restitution.[3] This appeal followed.

DISCUSSION
The Legislature intends that crime victims receive full restitution for their "economic loss[es]." (Welf. & Inst.Code, § 730.6, subd. (a) [juvenile offenders]; Pen.Code, § 1202.4 [adult criminals].) From the car accident and its immediate aftermath, Iaquinto suffered $57,499.74 in economic losses for his medical bills, property damage, and lost earnings. Appellant does not dispute Iaquinto's right to restitution of those losses. After suing appellant, Iaquinto received $100,000 in settlement from which he paid his attorneys $31,299.13[4] in legal fees and costs, for which the court also ordered restitution. Appellant contends Iaquinto may not receive restitution for those fees and costs. We disagree.
Welfare and Institutions Code section 730.6 (§ 730.6) authorizes a court to order a juvenile to pay restitution to compensate a victim in:
"... a dollar amount sufficient to fully reimburse the victim ... for all determined economic losses incurred as the result of the minor's conduct ... including all of the following: [¶] (1) ... value of stolen or damaged property.... [¶] (2) Medical expenses. [¶] (3) Wages ... lost due to injury..." (Italics added.)
Appellant contends Iaquinto's attorney's fees and costs were not recoverable for two reasons. First, according to appellant, section 730.6 does not include legal fees and costs in its list of compensable economic losses. Second, even if fees and costs counted as economic losses, appellant's $100,000 settlement payment more than satisfied Iaquinto's economic losses of $88,728.87.
This very division of the Second Appellate District found in In re Johnny M. (2002) 100 Cal.App.4th 1128, 123 Cal. Rptr.2d 316, that section 730.6's definition of "economic losses" is expansive. Specifically, In re Johnny M. noted that the italicized statutory language quoted above"including all of the following"is a phrase of enlargement, meaning the categories of economic losses explicitly identified in the statute are not exhaustive. (Id. at pp. 1135-1136, 123 Cal.Rptr.2d 316.) For guidance in interpreting "economic losses" in section 730.6, In re Johnny M. looked to the parallel adult restitution statute, Penal Code section 1202.4. (Id. at p. 1132, 123 Cal.Rptr.2d 316; see also People *236 v. Birkett (1999) 21 Cal.4th 226, 240 fn. 15, 87 Cal.Rptr.2d 205, 980 P.2d 912 [adult restitution statute reflects "parallel restitutionary requirements for juvenile offenders"].)
Penal Code section 1202.4 permits a court to order restitution of legal fees and costs that a victim incurred to collect restitution. (Pen.Code, § 1202.4, subd. (f)(3)(H) ["actual and reasonable attorney's fees and other costs of collection"].) We see no reason to distinguish between an adult's and juvenile's duty to provide full restitution to their victims. (People v. Martinez (2005) 36 Cal.4th 384, 394, fn. 2, 30 Cal.Rptr.3d 779, 115 P.3d 62 citing with approval In re Johnny M., supra, 100 Cal.App.4th 1128, 123 Cal.Rptr.2d 316 ["[S]ection 730.6[, which is applicable to juvenile offenders,] parallels Penal Code section 1202.4, which governs adult restitution."].) We thus find section 730.6's silence on attorney's fees and costs a mere legislative oversight. (Accord In re Johnny M., supra, [Legislature's failure to amend juvenile restitution statute's list of economic losses from "including all of the following" to "including, but not limited to, all of the following" when it so amended adult restitution statute was "merely legislative oversight"].) Consequently, in order to ensure Iaquinto receives full restitution for his economic losses from the accident, the juvenile court did not abuse its discretion when it ordered appellant to pay additional restitution for the legal fees and costs Iaquinto incurred to collect restitution. (In re Johnny M., supra, at p. 1132, 123 Cal.Rptr.2d 316 [restitution order reviewed for abuse of discretion].)
In calculating Iaquinto's total economic losses, the court determined he could recover all of his legal fees and costs as restitution. The court's unstated premise in awarding the entire amount was that Iaquinto incurred those fees and costs solely to collect restitution. That premise ignores that some portion of Iaquinto's $100,000 settlement was likely for his pain and suffering. The restitution statutes do not authorize restitution for legal fees incurred to recover general damages, only those incurred to collect restitution. (Pen.Code, § 1202.4, subd. (f)(3)(H).) The record does not show allocation of the settlement between economic damages supporting restitutionmedical expenses, property damage, and lost incomeand pain and suffering, which do not support restitution. Only attorney's fees and costs attributable to the former are properly subject to a restitution order. For example, if 70 percent of the settlement reflected payment of economic damages then, in the absence of any other facts, it would be appropriate to allocate 70 percent of the fees and costs to economic damages, which amount could be subject to restitution. We recognize that many settlements do not formally identify the economic and non-economic components of the parties' agreement. That is beside the point, as trial courts enjoy significant discretion in setting the amount of restitution (People v. Boudames (2006) 146 Cal.App.4th 45, 53, 52 Cal.Rptr.3d 629) and frequently have to make judgment calls in this area in the absence of a complete record.
We remand to the trial court to determine the allocation, if any, of the settlement between those categories. Based on that determination, the trial court shall enter a new restitution order for attorney's fees and costs equal to the pro rata share of the $100,000 settlement allocated to Iaquinto's losses for medical expenses, property damage, and lost income.

DISPOSITION
The restitution order of December 28, 2005, is reversed and the matter is remanded *237 to the trial court to recalculate the pro rata share of attorney's fees and costs for which appellant must provide restitution.
COOPER, P.J., and FLIER, J., concur.
NOTES
[1] Some confusion exists in the record about the amount of the restitution order, which-is not in the record. The probation report states it was $58,649.73. At the end of the hearing at issue in this appeal, the juvenile court stated the amount was $58,704.78. We conclude it was in fact $57,499.74 because that number makes the court's later mathematical calculations work.
[2] A second defendant also settled with Iaquinto for $15,000, but payment from sources independent of appellant do not affect his restitution obligations. (People v. Hamilton (2003) 114 Cal.App.4th 932, 941-942, 8 Cal. Rptr.3d 190.) Accordingly the juvenile court correctly disregarded this second settlement in analyzing appellant's restitution obligations.
[3] During the hearing, the parties sometimes discussed amounts of money in round figures, and sometimes to the exact penny. From those discussions, we cannot immediately discern the court's reason for adding 13 cents, but we accept that addition because the court incorporated it into its final order.
[4] Of that amount, $29,299.13 went to the personal injury attorney and $2,000 went to the attorney handling the restitution request.