Filed 8/26/16  P. v. Tinoco CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064372 |
| v. | (Super.Ct.No. FVA1400177) |
| MIGUEL ANGUIANO TINOCO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  Affirmed.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Pursuant to a plea agreement, defendant and appellant Miguel Anguiano Tinoco pled no contest to one count of committing a lewd act upon a child under the age of 14

1

(Pen. Code, § 288, subd. (a))[1] and one count of committing a lewd act upon a child by force (§ 288, subd. (b)(1)). Defendant also agreed to pay actual restitution. In accordance with the plea agreement, a trial court sentenced him to 18 years in state prison. It also ordered him to pay actual victim restitution in the amount of $2,782.

On appeal, defendant argues that the trial court erred in ordering him to pay restitution that included relocation fees, a utility deposit, and two therapy sessions. He contends that these three expenses were not incurred as a result of his conduct and/or they are not covered by the restitution statute. We affirm.

## FACTUAL BACKGROUND[2]

Officer David Ceballos responded to a call and interviewed Jane Doe (the victim), who was eight years old at the time. The victim said she was playing with defendant's children at their residence. Defendant was her neighbor. At some point, he gave the children some fruit to eat and when they were done, he told the victim to go to the bathroom. The victim went into the bathroom, and defendant went inside with her and locked the door. He then pulled her pants and underwear down, put her on top of the sink, and orally copulated her. He also digitally penetrated her vagina, and asked her if she liked it. She was crying and said she wanted to go back to playing with the other

---

[1] All further statutory references will be to the Penal Code, unless otherwise noted.

[2] Since this was a negotiated plea case, the facts are taken from the police report (PR) and the preliminary hearing transcript.

2

children.  He told her not to tell anyone what happened, kissed her on the cheek, and allowed her to leave the bathroom.

ANALYSIS

Section 1202.4 Authorized the Challenged Components of the Victim Restitution Order

Defendant challenges the court's restitution order, arguing that there was insufficient evidence to show that three components—the relocation expenses, the utility deposit, and two therapy sessions—constituted economic losses that were incurred as a result of his conduct; therefore, the expenses were unauthorized by section 1202.4.  We disagree.

A.  *Standard of Review*

We review the trial court's restitution order for abuse of discretion.  (*People v. Giordano* (2007) 42 Cal.4th 644, 663.)  "'A victim's restitution right is to be broadly and liberally construed.'"  (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.)  When considering restitution, the court "'must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.'"  (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498 (*Mearns*).)  "'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.'"  (*Id.* at p. 499.)

B.  *The Court Properly Ordered Defendant to Pay Victim Restitution*

1.  *Defendant Submitted on the Restitution Order*

At the outset, the People argue that defendant has forfeited his claim because he not only failed to object to the imposition of the victim restitution order, but he told the

3

court he was willing to submit on the $2,782 amount. The record here clearly demonstrates that the parties discussed the issue of victim restitution and came to an agreement that defendant should pay. As part of his plea agreement, defendant agreed to pay victim restitution. At the sentencing hearing, the court stated that it had received "a detailed accounting of the amount" from the district attorney's office.[3] It then asked if both parties were willing to submit on the actual victim restitution. Defense counsel repeated, "[I]s he willing to submit on the restitution?" Defendant replied, "Yes. Yes, I am." The court immediately imposed restitution in the amount of $2,782 pursuant to section 1202.4. Having agreed to pay the restitution, defendant cannot validly challenge the restitution order. (See *People v. Amin* (2000) 85 Cal.App.4th 58, 62.)

Defendant overlooks the fact that he submitted on the restitution and argues that no objection was required because the challenged items were unauthorized sentence terms. He further claims that if an objection was required, his counsel was ineffective for failing to object to the allegedly unauthorized restitution components. "To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.) Here, no prejudice resulted

---

[3] The district attorney's memorandum was not included in the record on appeal. However, the probation officer's report reflects that the victim submitted documentation to the district attorney's office for restitution, claiming a total amount of $2,782, which included $444 in lost wages for court appearances, $1,675 for relocation fees, $580 for a utility deposit, and $83 for two therapy sessions.

since the three challenged components of the victim restitution order were authorized by section 1202.4. (See § 2., *post*.)

2. *The Challenged Components Were Authorized by Section 1202.4*

a. *The Therapy Sessions*

Defendant asserts that the restitution order included $83 for therapy sessions for the victim's mother (mother) and contends that such item was not contemplated by the statute. He argues that therapy for the child, who was the actual victim, was covered; however, there was no proximate causation to support therapy expenses for mother, since she was "a mature adult" and was not the direct victim of the crime. Defendant's claim is meritless.

Section 1202.4, subdivision (a), sets forth the requirements for ordering restitution by stating that "a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." The statute further provides: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).)

Here, the record does not support defendant's conclusion that the two therapy sessions were for mother. The record only indicates that mother had put the child in therapy, and the court acknowledged so. Moreover, even if the therapy was for mother, she was expressly defined by section 1202.4 as a victim entitled to receive restitution.

5

Section 1202.4, subdivision (k), provides that the term "victim" includes "[t]he immediate surviving family of the actual victim," as well as "[a] person who has sustained economic loss as the result of a crime and who . . . [was] the parent . . . of the victim." (§ 1202.4, subd. (k)(1) & (3).)  Costs covered include expenses paid for counseling.  (§ 1202.4, subd. (f)(3)(C).)  Thus, whether the therapy sessions were for the child victim or for mother, the $83 restitution award was authorized.

### b. *The Relocation Expenses*

Defendant argues that the court erred in awarding $1,675 for relocation expenses since "there was no sufficient evidence presented that such an unusual act as relocation was required or was a logical consequence" of his criminal conduct.  He specifically claims that the victim did not have to move since the sexual activity took place at his residence, not hers.  Furthermore, he did not make any threats to her, and he was now in prison, so he was not a danger to her.  Defendant adds that the victim did not actually relocate *away* from him, since he was now in prison.  Thus, he contends that the court abused its discretion.  We disagree.

Section 1202.4, subdivision (f)(3)(I), allows restitution for:  "Expenses incurred by an adult victim in relocating away from the defendant, including, but not limited to, deposits for utilities and telephone service, deposits for rental housing, temporary lodging and food expenses, clothing, and personal items.  Expenses incurred pursuant to this section shall be verified by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim."

6

Here, mother had submitted a victim impact statement to the court. It was read by a victim advocate at the sentencing hearing. In it, mother stated that she lived next door to defendant and had talked to him many times before the incident, and that it broke her heart when her daughter told her what happened. She said they had to wait six months for the DNA results, and she tried to get a restraining order because they had to see defendant, which was "the worst feeling." Mother said that having to face him constantly and seeing his wife defend him made her so angry, and that seeing them daily "was a hard struggle." The victim's grandmother also submitted a victim impact statement, and she stated that the molestation had affected the child's schoolwork, and the victim had been getting in trouble at school. Mother thus sent the victim to counseling to help her. These statements provided a rational basis for the order to pay relocation expenses. Even though the incident did not occur in the victim's home, but rather in defendant's home, they lived right next door to each other. The relocation expenses were directly related to her family's need to leave the neighborhood after months of living there and having to be reminded of the incident every time the victim or her mother saw defendant, his wife, his home, and even his children. These expenses readily qualify as "economic loss incurred as the result of the defendant's criminal conduct" since they would not have been incurred had defendant not molested the victim. (§ 1202.4, subd. (f)(3).) We note defendant's claim that the relocation expenses were not authorized under section 1202.4, subdivision (f)(3)(I), because that subdivision "pertains to expenses for relocating *away*

7

from [him]."[4]  However, putting aside the specific wording of section 1202.4, subdivision (f)(3)(I), the trial court could reasonably have concluded that the relocation expenses, including the utility deposit (see § c., *post*), were an economic loss within the general language of the first sentence of section 1202.4, subdivision (f).  (See *Mearns*, *supra*, 97 Cal.App.4th at p. 503.)  Again, that subdivision provides that where "a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim."  (§ 1202.4, subd. (f).)  In other words, it was reasonable for the court to conclude that the enormous emotional trauma resulting from the child molestation was such that the victim and mother virtually had to move.  Thus, the relocation expenses were an economic loss resulting from defendant's conduct, under section 1202.4, subdivision (f).  No abuse of discretion occurred.  (See *Mearns*, *supra*, 97 Cal.App.4th at p. 503.)

c. *The Utility Deposit*

Defendant further argues that the expense for the utility deposit was not an actual loss.  He claims that "[t]his statutory item logically contemplates that the victim will have to pay some *new* utility deposit," and assumes that mother already lived in an apartment and had funds on deposit with the utility company; thus, she would "simply be taking the amount already on deposit and having it now allocated to utilities at the new location,"

---

[4]  We also note that section 1202.4, subdivision (f)(3)(I), states that expenses incurred under that subdivision need to be verified by law enforcement or a mental health treatment provider.  However, neither party mentioned this requirement at the sentencing hearing.  Moreover, defendant does not raise any such issue on appeal.

and "[t]here would be no loss at all." Defendant's claim is pure speculation. He does not cite to any portion of the record or any authority to support his claim. Moreover, the restitution claimed for the utility deposit could have been for a deposit lost because the victim had to terminate her lease early when she moved. In any event, defendant was given a reasonable opportunity to be heard on the issue of restitution. The probation report gave notice of the recommended amount of restitution, and section 1202.4, subdivision (f)(1), afforded him the right to a hearing to present evidence to dispute or discredit the restitution claim. (See *People v. Foster* (1993) 14 Cal.App.4th 939, 946, superseded on other grounds as stated in *People v. Sexton* (1995) 33 Cal.App.4th 64, 68; see also, *People v. Goulart* (1990) 224 Cal.App.3d 71, 83.) We note that "[w]hen the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount." (*Foster*, at p. 947.) Defendant did not request a hearing, but rather submitted on the restitution order. In other words, he did not, and has not, come forward with contrary information regarding the amount claimed by the victim.

Ultimately, "[a]t the core of the victim restitution statutory scheme is the mandate that a victim who suffers economic loss is entitled to restitution and that the restitution is to be 'based on the amount of loss claimed by the victim.'" (*People v. Fulton* (2003) 109 Cal.App.4th 876, 885-886.) The restitution award should "fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's

9

criminal conduct." (§ 1202.4, subd. (f)(3).) On this record, we conclude that the trial court did not abuse its discretion in awarding the victim restitution.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

10