[No. B135874. Second Dist., Div. Three. Oct. 19, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNIE LEE MOLOY, Defendant and Appellant.

258

**COUNSEL**

Ronnie Duberstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Jaime L. Fuster and Alan D. Tate, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KLEIN, P. J.**—Defendant and appellant Bennie Lee Moloy appeals the judgment entered after conviction following plea of guilty to conspiracy to knowingly present a false or fraudulent claim and knowing presentation of a false or fraudulent claim. (Pen. Code, §§ 182, subd. (a)(1), 550, subd. (a).)[1] The trial court sentenced Moloy to a term of four years in state prison. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Between 1995 and 1998, Moloy participated in a scheme by which he and others caused unsuspecting motorists to collide with vehicles driven by

---

[1]Subsequent unspecified statutory references are to the Penal Code.

Moloy or Moloy's associates.[2] As a result of these induced traffic accidents, Moloy submitted false claims under a variety of names to the companies who insured the victimized motorists, in this case State Farm and Safeco Insurance Companies. The false claims were submitted through a sophisticated network of coconspirators including attorneys, medical professionals and Department of Motor Vehicle employees. Moloy's fraudulent claims resulted in payments to Moloy of at least $38,151. At sentencing, the trial court ordered Moloy to make direct restitution to State Farm and Safeco Insurance Companies in that amount. The trial court noted *People v. Birkett* (1999) 21 Cal.4th 226, 244 [87 Cal.Rptr.2d 205, 980 P.2d 912], had held that an insurer, other than the Restitution Fund, who pays the crime-related losses of its insured under the terms of an insurance policy is not a direct victim of crime, and thus is not entitled to restitution from the offender. However, the trial court distinguished *Birkett* because the insurance companies in this case were the direct victims of Moloy's offenses.

## CONTENTION

Moloy's sole contention on appeal is that the restitution order violated *Birkett* because the insurance companies made the payments to Moloy on behalf of their insureds and thus were not direct victims of Moloy's offenses.

## DISCUSSION

Moloy contends the insured motorists, not the insurance companies, were the direct victims of his crimes and that the insurance companies merely settled claims involving their insureds as they were required to do by contract. Moloy points out that he could not have sued the insurance companies directly without first obtaining a judgment for damages against the insureds, and thus the insurance companies are indirect victims of his offenses. Moloy concludes the matter must be remanded to correct the restitution order.

We disagree.

A trial court's obligation to order payment of restitution to victims of crime derives from article I, section 28, subdivision (b), of the California Constitution which states: "Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary

---

[2]The report of the probation officer indicates Moloy preyed on elderly drivers, frequently stole the victims's credit cards during the information exchange following the "accident," and thereafter used the credit cards to make thousands of dollars worth of purchases.

reasons exist to the contrary." Section 1202.4, implements this directive in a nonprobationary case.[3] It states the legislative intent "that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." (§ 1202.4, subd. (a)(1).)

As has been noted above, *Birkett* concluded entitlement to restitution arises only in favor of " 'direct' [crime] victim[s]' . . . and insurers [do] not become such 'direct victim[s]' by reimbursing crime losses under the terms of their policies." (*People v. Birkett, supra,* 21 Cal.4th at p. 229.) Stated differently, "[A]n insurer who has incurred expenses solely by virtue of a contractual duty to indemnify the direct victim is not itself an 'object' of the crime and hence not a direct victim. [The insurer] cannot, therefore, be the recipient of a . . . restitution order unless it is itself a direct victim of criminal conduct." (*People v. Sexton* (1995) 33 Cal.App.4th 64, 71 [39 Cal.Rptr.2d 242], cited with approval in *People v. Birkett, supra,* at p. 242.)

" '[A] "victim" is a "person who is the *object* of a crime . . . ." ' " (*People v. Birkett, supra,* 21 Cal.4th at p. 232, quoting *People v. Crow* (1993) 6 Cal.4th 952, 957 [26 Cal.Rptr.2d 1, 864 P.2d 80], quoting Black's Law Dict. (5th ed. 1979) p. 1405, col. 2, italics added.) In *Birkett,* the defendant stole automobiles and ran a "chop shop." The object of this conduct was to profit from the theft of the vehicles and the subsequent sale of their parts. The victimized owners of the vehicles were the direct victims of the crime and their property losses were reimbursed by their insurance companies.

The objective undertaken by Moloy and his coconspirators, on the other hand, was to victimize the insurance companies by inducing them to settle false claims. Although the insureds also were victims in the sense Moloy involved them in motor vehicle accidents thereby exposing them to property damage, the risk of physical injury and the possibility their credit card information might be misappropriated, the insurance companies and not the motorists were the objects of the fraudulent claims which followed. Indeed, Moloy and his confederates were part of a large and sophisticated scheme that included lawyers, medical professions and Department of Motor Vehicles employees all geared to present false claims to insurance companies. This situation is to be contrasted with *Birkett* where the insured suffered the actual property loss which the insurance company merely reimbursed.

---

[3] *Birkett* addressed restitution in the context of a probationer under former section 1203.4. This case involves a nonprobationary term which is governed by section 1202.4. However, neither side to this dispute suggests this difference is determinative and both agree *Birkett* applies here notwithstanding this distinction. (See *People v. Hove* (1999) 76 Cal.App.4th 1266, 1271-1272 [91 Cal.Rptr.2d 128].)

The fact the insurance companies were obligated to make the payments to Moloy by reason of their contracts with the insureds does not foreclose the conclusion the insurance companies were the direct victims of Moloy's fraud. Indeed, the insured motorists suffered no financial loss arising out of Moloy's submission of false insurance claims and there is no evidence that Moloy or his accomplices attempted to obtain any property fraudulently from the motorists with whom they induced automobile collisions, or that funds were received from anyone other than an insurance company. The loss that flowed from the conduct for which Moloy was convicted was borne entirely, and directly, by the insurance companies. Thus, the insurance companies were the direct victims of the loss and restitution properly was ordered in their favor. (*People v. Birkett, supra,* 21 Cal.4th at p. 246; *People v. Crow, supra,* 6 Cal.4th at p. 957; *People v. Sexton, supra,* 33 Cal.App.4th at p. 70.) Accordingly, the trial court's order for restitution is supported by the record.

Payment of restitution by Moloy directly to the insurance companies also is consistent with the state's interest in rehabilitation, which restitution is designed to serve. " 'Restitution "is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. . . . [T]he direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine." [Citations.]' " (*People v. Hove, supra,* 76 Cal.App.4th at p. 1273; *People v. Crow, supra,* 6 Cal.4th at p. 957; *People v. Moser* (1996) 50 Cal.App.4th 130, 135-136 [57 Cal.Rptr.2d 647].) Thus, for the additional reason that payment of restitution directly to the defrauded insurance companies is most consistent with the rehabilitative benefits sought to be derived from ordering restitution in the first instance, the trial court's order for payment of restitution to State Farm and Safeco Insurance Companies was not inappropriate on the facts presented here.

In sum, no reversible error appears in the trial court's order for restitution.

DISPOSITION

The judgment is affirmed.

Croskey, J., and Kitching, J., concurred.

A petition for a rehearing was denied November 16, 2000, and the opinion was modifed to read as printed above.