126 Cal.Rptr.2d 694 (2002)
103 Cal.App.4th 464
The PEOPLE, Plaintiff and Appellant,
v.
Elias Gebran CHAGHOURI, Defendant and Respondent.
No. H023690.
Court of Appeal, Sixth District.
November 1, 2002.
Review Denied January 15, 2003.[*]
*695 Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Catherine A. Rilvin, Supervising Deputy Attorney General, for Appellant The People.
Peter F. Goldscheider, under appointment, by the Court of Appeal for Defendant and Respondent Elias Gebran Chaghouri.
RUSHING, J.
The question presented in this appeal by the state is whether the State Board of Equalization is entitled to recover, as restitution, sums it expended in an investigation into defendant Elias Gebran Chaghouri's wrong doing.
Defendant pleaded no contest to five charges, grand theft (Pen.Code, §§ 484, 487, subd. (a)), two counts of making false and fraudulent sales tax returns (Rev. & Tax.Code, § 7153.5), offering false documents (Pen.Code, § 132), and perjury (Pen.Code, § 118). He stipulated that he owed $153,421 in unpaid taxes and that the state was entitled to impose a 25 percent penalty of $38,355 together with prejudgment interest of $125,967 with post-judgment interest at the rate of 10 percent. He was placed on probation. It was undisputed that the state expended $121,226 in investigation costs but whether that could be recovered was left to the court to decide.
Restitution orders in California can include costs incurred by the direct victim. The narrow question presented in this appeal is whether the Board of Equalization is a direct victim. The trial court held that it was not. The state appeals. We shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND
During an audit of defendant's business, I.B.I. Leasing and Renting, Inc., operating under the name of Hayat Car Rental, the auditor from the Board of Equalization noticed discrepancies between the income shown on the company's bank statements and the gross sales figures reported on its sales tax returns. Chaghouri claimed that *696 the extra income was not subject to the sales tax in the return, because it was for nontaxable items such as cash advances to customers and damage to rental cars. He produced a variety of receipts and work orders and inspection sheets as proof. Many of these documents were patently fake and when the auditor took the 40 or so repair estimate sheets to the local auto body repair shop that issued them it turned out only three were genuine and even those three had been altered.
Based on the auditor's findings, the board obtained search warrants. Executing on these search warrants for the two Hayat offices and the owner's residence, state investigators seized 40 file boxes of documents and three computers containing the true sales ledgers.
The matter of whether the Board of Equalization could collect its investigative costs was submitted to the trial court. After the submission of letter briefs and argument, the court ruled that since the board's purposes are to collect taxes and monitor compliance or noncompliance with the sales tax law, investigation is part of its normal and publicly funded function and therefore, cost of investigation is a part of its normal operating costs and overhead. The court ruled that the board incurred no economic loss subject to restitution.

DISCUSSION
It is undisputed that the costs of investigation were directly related to defendant's false and fraudulent conduct, theft and perjury. However, no California case directly addresses the question of whether the Board of Equalization is entitled to recover its investigative costs for carrying out its purpose of collecting taxes and monitoring compliance or noncompliance with the sales tax laws. The People argue, by analogy from the power expressly conferred by statute on the Franchise Tax Board, permitting it to collect its investigative costs, that the Board of Equalization should have its investigative costs as well.
While a reviewing court typically reviews the amount of a restitution order for abuse of discretion (People v. Mearns (2002) 97 Cal.App.4th 493, 118 Cal.Rptr.2d 511), the question presented here, whether the Board of Equalization is entitled to restitution for the cost of investigation as a direct victim, is a pure issue of law. Therefore, we review this question de novo. (See McGhan Medical Corp. v. Superior Court (1992) 11 Cal.App.4th 804, 809-810,14 Cal.Rptr.2d 264.)
We considered two separate approaches. One, whether in the absence of direct statutory authority, as is found in the framework of the Franchise Tax Board, Penal Code section 1202.4 authorizes the Board of Equalization to collect its investigative costs as a "direct victim" of a crime. (Pen. Code, § 1202.4.) Second, whether general law and its underlying principals provide a basis for allowing the Board of Equalization to collect its investigative costs where the specific conduct of the defendant caused the charges incurred.
We shall first deal with the question of whether Penal Code section 1202.4 authorizes the collection of investigative costs. Penal Code section 1202.4's stated intent is "that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." (Pen.Code, § 1202.4, subd. (a)(1).) Victims entitled to restitution include "any governmental ... agency ... when that entity is a direct victim of a crime...." (Pen.Code, § 1202.4, subd. (k)(2).)
When is a government agency a direct victim of a crime? In People v. Torres (1997) 59 Cal.App.4th 1, 68 Cal.Rptr.2d *697 644, the court held that the "Legislature did not intend to include as a `direct victim of a crime' a law enforcement agency that, in the course of investigating criminal activity, purchases illegal drugs." (Id. at pp. 4-5, 68 Cal.Rptr.2d 644.) Restitution is also not available to a governmental agency for the general cost of prosecuting criminals. (People v. Burnett (1978) 86 Cal. App.3d 320, 323, 150 Cal.Rptr. 126 [no restitution for the cost of defendant's extradition]; People v. Baker (1974) 39 Cal. App.3d 550, 559, 113 Cal.Rptr. 248 [no restitution for the cost of prosecuting a defendant].)[1] The beneficial aspects of this rule are obvious. With the wide discretion afforded to California prosecutors as to whether to charge, it follows that the Legislature could have intended that this discretion not be influenced by the prospect of recovering the agency's expenses.
In People v. Birkett (1999) 21 Cal.4th 226, 87 Cal.Rptr.2d 205, 980 P.2d 912, the California Supreme Court faced the related question of whether an insurance company would be entitled to recover its losses under the provisions of Proposition 8 which states, "all persons who suffer losses as a result of criminal activity shall have the right to restitution." (Cal. Const., art. I, § 28, subd. (b).) In that case, the defendant ran a "chop shop," a place where stolen cars were dismantled and sold for parts. (People v. Birkett, supra, 21 Cal.4th at p. 229, 87 Cal.Rptr.2d 205, 980 P.2d 912.) The trial court took evidence from the owners of the cars that had been stolen by the Birketts and split a mandatory probationary restitution order for the full amount of certain "`direct victim[s]'" (ibid.) losses between the victims themselves and the insurers who would partially reimburse them. In awarding the insurance carriers the amount that they had paid out in satisfying the victims' claims, the trial court reasoned that the insurance carriers had stepped into the shoes of the insureds who suffered the loss. The Supreme Court concluded that the 1995 laws "gave only direct crime victims a right to restitution from adult probationers, and insurers did not become such direct victims by reimbursing crime losses under the terms of their policies." (People v. Birkett, supra, 21 Cal.4th 226, 87 Cal. Rptr.2d 205, 980 P.2d 912.)
By contrast, in People v. Moloy (2000) 84 Cal.App.4th 257, 261, 100 Cal.Rptr.2d 676, Moloy staged accidents and conspired to present false and fraudulent claims. The court found that the insurers themselves were the direct victims of defendant's crimes as they were the object of the criminal conspiracy. The manner in which Moloy carried out his crimes illustrates why the insurance companies were the objects of the crime. Moloy and others caused unsuspecting motorists to collide with cars driven by himself and his associates. In other words, while Moloy and the other drivers were the actual victim of the staged automobile accident, the insurance companies were the victims of Moloy's conspiracy to defraud, for which he was convicted.
Thus, it is not its status as a governmental entity that entitles it to restitution for losses, it is its function. The Board of Equalization in California is the state agency in charge of ensuring that merchants doing business in California make quarterly payments of sales and use taxes. Those proceeds, when collected, are then distributed as required by state law. If the insurers in Moloy had hired a collection agency that collector would be in *698 the same position as the Board of Equalization here.
In the course of the analysis in People v. Birkett, supra, 21 Cal.4th 226, 87 Cal. Rptr.2d 205, 980 P.2d 912, the court favorably cited People v. Crow (1993) 6 Cal.4th 952, 26 Cal.Rptr.2d 1, 864 P.2d 80, a case specifically relied on by the People in its claim that the Board of Equalization was entitled to restitution as a result of defendant's criminal conduct. Crow is distinguishable because it involved a different question and required the court to construe a different controlling statute, Government Code section 13967, subdivision (c). The court had to determined whether that section entitled a court to make a restitution award to a county for losses arising out of welfare fraud.
The People also argue that where there is specific statutory authority, as in Birkett, restitution may be ordered. Here, the People contend that restitution orders may be imposed pursuant to Penal Code section 1203.1, subdivision (j) where it would aid in the objectives of the probation order and generally assist in "the reformation and rehabilitation of the probationer, ..." (Pen.Code, § 1203.1, subd. (j).) While, as a general matter, we have no quarrel with that proposition, it still comes down to the issue of who the victim actually is. (People v. Baker (1974) 39 Cal.App.3d 550, 113 Cal.Rptr. 248.)
Finally, the People's reliance on People v. Draut (1999) 73 Cal.App.4th 577, 86 Cal.Rptr.2d 469 is misplaced. In Draut the defendant failed to pay withholding taxes for his employees to the Franchise Tax Board, a government agency specifically authorized by statute to obtain restitution orders. (Rev. & Tax.Code, §§ 19701, subd. (c) & 19720, subd. (d).) Defendant was ordered to pay the back taxes of his employees, not the costs of investigation, as here. Lastly, the defendant in Draut was sent to prison for seven years. There was no probation order that could come under the provisions of Penal Code section 1203.1.
We do not conclude that an agency could never be a direct victim. The paradigm example of when an agency would be a direct victim is where a criminal defendant steals a computer or some other piece of equipment from a police department. The police department might very well do its own investigation, trace the equipment down, arrest the defendant, charge him, appear at trial, testify and obtain a conviction. It would be entitled to all of its costs which would include the cost of the stolen computer as well as the cost of finding the person who stole it. This is different from a case where a thief takes a computer from the sheriffs department and the crime is investigated and prosecuted by the neighboring police department. In that instance, the sheriffs department would be entitled to the cost of its computer, but the police department would not be entitled to the cost of its investigation because it was not a victim of the theft.
In the trial court, the People argued that Penal Code section 1202.4 would authorize the collection of restitution in both of the examples set forth above. The Attorney General abandons that position on appeal. Instead, the Attorney General takes the position that because the Board of Equalization collects and distributes money for other agencies of the government that it becomes, in consequence of its collection and distribution functions, a direct victim.
This is not an unreasonable argument and were our function to look at this as a common law issue, we might well conclude that such power was a reasonable reading of the common law right of a victim to recoup all of its damages caused by the *699 wrongdoer. But in California, the common law has been supplanted by statute. We are thus led to conclude that this argument is best directed at the Legislature and not the courts. The Legislature could well take up and consider the policy questions attendant to whether it is wise and administratively possible to separate the charging discretion from the possible impulse to prosecute only those from which the cost of prosecution could be recovered. The Legislature could look at and consider whether in special cases restitution should be allowed to governmental agencies where the costs of investigation is high, such as here, where the criminal defendant's conduct caused the auditing task to be increased dramatically. Or it could see fit, as in the case of the Franchise Tax Board, to allow this governmental agency rather than all governmental agencies to collect its investigative loss. However, currently there is no statutory authorization for the claim made by the Board of Equalization.

DISPOSITION
The judgment is affirmed.
WE CONCUR: BAMATTRE-MANOUKIAN, Acting P.J., and MIHARA, J.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] These cases were decided under Penal Code section 1203.1, the predecessor to Penal Code sections 1203.4 and 1202.4 which are applicable here.