[No. D055088. Fourth Dist., Div. One. July 20, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOTT BUSSER, Defendant and Appellant.

## COUNSEL

Henry C. Coker, Public Defender, Randy Mize, Chief Deputy Public Defender, Matthew Braner and Paul Rodriguez, Deputy Public Defenders, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, Acting P. J.**—Scott Busser appeals an order requiring him to pay restitution to his insurance carrier after he pleaded guilty to misdemeanor hit and run (Veh. Code, § 20002, subd. (a)) and to presenting a materially false statement to his insurance company (Pen. Code,[1] § 550, subd. (b)(1)), a felony. Busser's insurer, Government Employees Insurance Company (GEICO), paid the repair costs from an accident involving Busser but later discovered Busser had lied about the circumstances of the accident. When he lied, Busser violated the terms of the insurance policy and provided GEICO with grounds to rescind the contract. However, GEICO would have been contractually obligated to pay all the repair costs from the collision if Busser had not lied about the facts of the accident. Thus, Busser's misrepresentation did not actually induce GEICO to provide coverage where there was none or to pay more in repair costs than it was otherwise obligated to pay under the contract. Nevertheless, the trial court ordered Busser to pay restitution to GEICO under subdivision (a)(3)(B) of section 1202.4 for the repair costs from the accident.[2] We conclude, based on the rule first stated in *People v. Crow* (1993) 6 Cal.4th 952, 962 [26 Cal.Rptr.2d 1, 864 P.2d 80] (*Crow*), the repair costs GEICO would have been obligated to pay if Busser had not presented a materially false statement are not losses resulting from the criminal offense under section 1202.4 because they are not attributable to Busser's criminal misrepresentation. Accordingly, we reverse that part of the trial court's order requiring Busser to reimburse GEICO for the repair costs arising out of the accident.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] The court also ordered Busser to pay GEICO the costs it incurred to investigate his fraud. Busser does not contest the court's order that he repay these investigative costs.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning of January 21, 2007, Busser's car collided with Michael Fuhr's car on the freeway and sped away rapidly. Fuhr followed Busser's car and unsuccessfully attempted to get Busser to stop. However, Fuhr did manage to record Busser's license plate number. The following day, he filed a hit-and-run collision report with the California Highway Patrol (CHP). The accident caused about $4,500 in damages to Fuhr's car, which he repaired through his insurance company, 21st Century Insurance.

On January 23, Busser reported to GEICO that an unknown vehicle had struck his car while it was parked in front of his home the previous night. GEICO opened a claim, appraised the damages to Busser's car, and paid him $2,450.60 for repairs.

Meanwhile, the CHP investigated Fuhr's hit-and-run claim and determined the car that hit his car was registered at Busser's address. On January 25, an officer mailed a hit-and-run letter to Busser requesting contact regarding the accident. Busser never responded to the letter. The CHP also contacted GEICO about the hit and run, causing GEICO to reopen Busser's claim and assign it to the special investigations unit.

GEICO investigator David McCauley interviewed Busser while investigating the reopened claim. At first, Busser repeated his initial statement that the damage to his car occurred while it was parked. Eventually, however, Busser admitted to McCauley that all of the damage resulted from the collision with Fuhr's car on January 21. GEICO investigators ultimately determined Busser was at fault for the collision with Fuhr and reimbursed 21st Century Insurance $4,553.21 for the amount it paid to repair Fuhr's car.

Busser was charged with four offenses arising out of the hit-and-run accident and the insurance fraud. Busser pleaded guilty to misdemeanor hit and run and to presenting materially false or misleading information to his insurance company, a felony. The remaining charges were dismissed. The trial court imposed a suspended sentence and granted Busser three years of formal probation for the felony, and denied probation but gave Busser credit for time served for the misdemeanor.

The trial court held a restitution hearing several months after Busser's sentencing. GEICO requested reimbursement for the repair costs to both cars and the costs of investigating Busser's claim. McCauley was the only

witness. He testified to the repair costs and the costs of the GEICO investigation. He also indicated GEICO would have paid for the damages to both Busser's and Fuhr's cars under the insurance policy if Busser had been truthful about the facts of the accident from the start. At the hearing, the court awarded GEICO $7,003.81 for the repair costs to both cars and $1,459.80 for its investigation into Busser's fraud. Busser timely appeals the order as it relates to the repair costs. He concedes the trial court properly imposed restitution for GEICO's investigative costs. (See *People v. Ortiz* (1997) 53 Cal.App.4th 791, 797–798 [62 Cal.Rptr.2d 66].)

## DISCUSSION

Busser argues GEICO should not receive any restitution for the costs of repairing the damaged cars because his fraud did not actually cause GEICO to pay the repair costs. We review the trial court's restitution order for abuse of discretion. (*People v. Thygesen* (1999) 69 Cal.App.4th 988, 992 [81 Cal.Rptr.2d 886].) An order resting upon a " 'demonstrable error of law' " constitutes an abuse of the court's discretion. (*People v. Draut* (1999) 73 Cal.App.4th 577, 581 [86 Cal.Rptr.2d 469].)

██ The California Constitution confers on "all persons who suffer losses as a result of criminal activity . . . the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A).) The "primary purpose of victim restitution is to fully reimburse the victim," although restitution also furthers rehabilitative and deterrent objectives for the defendant and others. (*People v. Bernal* (2002) 101 Cal.App.4th 155, 161–162, 168 [123 Cal.Rptr.2d 622].) In the 1990's, the Legislature consolidated much of California's restitution scheme in section 1202.4.[3]

██ Subdivision (f) of section 1202.4 provides that "in every case in which a victim has suffered economic loss *as a result of* the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims . . . ." (Italics added.) The restitution award amount must "fully reimburse the victim or victims for every determined economic loss incurred *as the result of* the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3), italics added.) Thus, restitution not only requires a crime, a victim, and an economic loss, but the victim must have actually suffered the economic loss because of the criminal conduct.

[3] See *People v. Giordano* (2007) 42 Cal.4th 644, 651–656 [68 Cal.Rptr.3d 51, 170 P.3d 623], for a thorough overview of the history and evolution of the state's restitution scheme.

"A 'victim' is a 'person who is the object of a crime . . . .' " (*Crow, supra,* 6 Cal.4th 952, 957, quoting Black's Law Dict. (5th ed. 1979) p. 1405, col. 2.) The California Supreme Court in *Crow, supra,* 6 Cal.4th at page 957, held a defrauded governmental agency " ' "may be the beneficiary of [restitution] if it has incurred actual loss due to the crime," ' " even though an agency is not a natural person. The Legislature later amended the definition of "victim" in the restitution statute to include, among other things, "[a]ny corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime." (§ 1202.4, subd. (k)(2).) Courts have since unequivocally held an insurance company may be entitled to restitution when it is the direct victim of a crime. (See, e.g., *People v. O'Casey* (2001) 88 Cal.App.4th 967 [106 Cal.Rptr.2d 263] (*O'Casey*); *People v. Moloy* (2000) 84 Cal.App.4th 257 [100 Cal.Rptr.2d 676] (*Moloy*).)

Insurance companies that "suffer[] the consequences of crime only by reimbursing the crime-related losses of their policyholders [do] not reasonably fit within [the] definition [of direct victims]." (*People v. Birkett* (1999) 21 Cal.4th 226, 233 [87 Cal.Rptr.2d 205, 980 P.2d 912].) An insurance company must be "the real and immediate object[] of the [defendant's] offenses" to warrant restitution from the defendant. (*Ibid.*) For example, in *O'Casey, supra,* 88 Cal.App.4th at page 971, the court upheld an order requiring the defendant to pay restitution to a workers' compensation insurer after the insurer honored the defendant's false workers' compensation claim and made payments to the defendant and her medical providers. Likewise, the court in *Moloy, supra,* 84 Cal.App.4th at page 261, upheld an order requiring the defendant to pay restitution to defrauded insurance companies because he deceived the insurers into settling false claims and the insurers directly bore the losses that flowed from his conduct. In his case, Moloy fraudulently caused car accidents and then submitted false claims to the motorists' insurance companies. (*Id.* at p. 260.) In both cases, the courts considered the insurance companies direct victims because the defendants directed their fraud at the insurance companies and induced them to make payments they otherwise would not have made absent the defendants' frauds.

Here, Busser intentionally lied to GEICO when he claimed the damage to his car came from an unknown source. Thus, Busser directly victimized GEICO because he criminally presented false information to the company. However, GEICO is not a direct victim in the same sense as the insurers in *O'Casey* and *Moloy.* Whereas those insurers would not have paid out any money absent the defendants' frauds because there were no other underlying

events triggering coverage, GEICO would have paid the repair costs from the hit-and-run accident even if Busser had not lied. (See *O'Casey, supra,* 88 Cal.App.4th at p. 971; *Moloy, supra,* 84 Cal.App.4th at p. 260.) GEICO was contractually obligated to assume such risk in exchange for the premiums paid by Busser. Therefore, Busser's fraud was not the underlying event that actually resulted in GEICO providing him with coverage or paying the repair costs from the accident. Consequently, the amount GEICO is entitled to in restitution is not equal to the entire amount GEICO paid out surrounding the accident, even though GEICO was a direct victim of Busser's fraud.

██ The Legislature intended restitution to "restore the economic status quo" by returning to the victim " 'funds in which he or she has an ownership interest' " following a criminal conviction. (*People v. Giordano, supra,* 42 Cal.4th 644, 658.) However, "a restitution order 'is not . . . intended to provide the victim with a windfall. [Citations.]' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 28 [95 Cal.Rptr.3d 751].) Therefore, "restitution of the victim is only ordered if the victim suffers economic loss." (*People v. Bernal, supra,* 101 Cal.App.4th at p. 168.) By the plain language of the statute, the victim's economic loss must come "*as a result of* the defendant's conduct." (§ 1202.4, subd. (f), italics added.) Victims are only entitled to an amount of restitution so as to make them whole, but nothing more, from their actual losses arising out of the defendants' criminal behavior. (*People v. Fortune* (2005) 129 Cal.App.4th 790, 795–796 [28 Cal.Rptr.3d 872].)

In *Crow, supra,* 6 Cal.4th 952, the Supreme Court determined the basic method for calculating the proper amount of restitution in welfare fraud cases. The *Crow* court upheld an order requiring the defendant to pay restitution to a county social services department after he was convicted of aiding and abetting welfare fraud by concealing his presence in the household of a welfare recipient. (*Id.* at pp. 954–956.) When considering the proper amount of restitution, the court declared: "Any money that the government would have been obligated to pay had the fraud not occurred is not attributable to the fraud, and thus is not a 'loss' arising out of the criminal offense." (*Id.* at p. 962.) Thus, the court held "the defrauded agency's 'loss' should be calculated by subtracting the amount the government would have paid had no acts of fraud occurred from the amount the government actually paid." (*Ibid.*) The court's rule ensured the defendant fully compensated the agency for his fraud, consistent with the requirements of section 1202.4, without providing the agency with an undeserved windfall.

The *Crow* court's pronouncements on properly calculating a victim's restitution award apply equally in this case, even though the victim here was an insurance company rather than a government agency. The amount of GEICO's restitution award must reflect the actual loss GEICO incurred due to

Busser's crime. (See *People v. Fortune, supra*, 129 Cal.App.4th at p. 795.) Any money GEICO would have been obligated to pay had Busser not misrepresented the facts of the accident is not attributable to his misrepresentation, and thus is not a loss arising out of his criminal offense as required by section 1202.4. (See *Crow, supra*, 6 Cal.4th at p. 962; § 1202.4, subd. (f).) McCauley, GEICO's agent, admitted GEICO would have paid the $7,003.81 in repair costs under the insurance policy if Busser had not lied about the accident. Thus, applying the *Crow* method, if we take the $7,003.81 in repair costs GEICO paid from the accident following Busser's fraud, less the $7,003.81 in repair costs GEICO would have paid absent Busser's fraud, it leaves no actual loss to GEICO due to Busser's fraud. Therefore, the restitution order should not rightfully have included any of the repair costs from the accident paid by GEICO. Furthermore, this conclusion is unaffected by GEICO's right to rescind the parties' insurance contract based on Busser's fraud.

■ "[R]escission stands as a contract remedy." (*People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 133 [3 Cal.Rptr.3d 429].) "[A] rescission effectively renders the [insurance] policy totally unenforceable from the outset so that there was never any coverage and no benefits are payable." (*Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 182 [243 Cal.Rptr. 639].) However, the remedies of rescission and restitution are distinct. (*Beaumont, supra*, 111 Cal.App.4th at p. 133.) Under section 1202.4, the only predicate for a restitution award is the defendant's conviction for the crime that actually caused the victim's economic loss. (§ 1202.4, subd. (f).) Whether the victim also holds a contractual remedy against the defendant is irrelevant for the purposes of determining the defendant's restitution obligation. (See *People v. Bernal, supra*, 101 Cal.App.4th 155, 162.) The criminal process should not be " 'used to supplement a civil suit or as a threat to coerce the payment of a civil liability and thus reduce the criminal court to a collection agency.' " (*People v. Williams* (1966) 247 Cal.App.2d 394, 405 [55 Cal.Rptr. 550].)

■ Busser's criminal misrepresentation contractually entitled GEICO to rescind the insurance policy. GEICO may pursue this right in a civil action. However, the fact remains GEICO did not incur an economic loss from its payment of the accident repair costs as a result of Busser's criminal misrepresentation. The accident itself triggered an existing lawful obligation on the part of GEICO to pay for the repair costs. We cannot say whether GEICO should recover these expenditures in a separate action to rescind the insurance contract, but we can say that a restitution order is not the proper method of deciding the issue.

## DISPOSITION

The portion of the restitution order requiring Busser to reimburse GEICO $7,003.81 for the repair costs arising out of the hit-and-run accident is reversed.

Nares, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied August 16, 2010.