Filed 9/7/16  P. v. Davillier CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>KIMBERLY DAVILLIER,<br><br>     Defendant and Appellant. | B267818<br><br>(Los Angeles County<br>Super. Ct. No. VA131555) |

APPEAL from an order of the Superior Court of Los Angeles County, Yvonne T. Sanchez, Judge.  Affirmed.

Juliana Drous, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

After Kimberly Davillier pleaded no contest to burglary, the trial court held a restitution hearing, at the conclusion of which the court ordered Davillier to pay the victim, Downey Nissan, $21,352.77 plus interest. Davillier contends that the trial court abused its discretion in ordering restitution because Downey Nissan's insurer, not Downey Nissan, made the restitution request, and because there was an insufficient factual basis for the amount of restitution the court ordered. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2014 Davillier pleaded no contest to one count of burglary (Pen. Code, § 459)[1] after the People presented evidence at a preliminary hearing that she made false statements on a credit application to finance the purchase of a car from the Downey Nissan dealership, took possession of the car with a $750 down payment, and made no further payments. As part of her plea agreement, Davillier agreed to pay restitution. The trial court sentenced Davillier to three years probation, and scheduled a restitution hearing.

On September 14, 2015 the trial court conducted the restitution hearing. Citing a letter from Downey Nissan's insurer requesting $21,352.77 in restitution, the prosecutor asked the trial court to order Davillier to pay that amount to Downey Nissan. Davillier objected on the ground that the request for restitution did not come from the actual victim, Downey Nissan, but from its insurer. Davillier also objected to the amount of restitution requested, arguing that Downey Nissan was entitled only to recover the value of the car, which, she contended, was not $21,352.77. Counsel for Davillier represented that she had evidence (although she did not introduce that evidence at the hearing) that Downey Nissan purchased the car in July 2011 for $16,000, Davillier purchased the car

---

[1]     Statutory references are to the Penal Code.

2

in August 2011 for $19,595, the towing company that took possession of the car from Davillier sold it in July 2013 for $4,661, and the car was sold again in May 2014 for $12,000. Although counsel for Davillier did not suggest which (if any) of these figures reflected the amount of restitution to which Downey Nissan was entitled, counsel for Davillier argued the amount was not $21,352.77.

The court concluded that the value of the car was "whatever someone is willing to pay for it," and that Davillier had contracted to pay Downey Nissan $22,418.63 for the car. The trial court ordered Davillier to pay restitution to Downey Nissan in the amount of $21,352.77, plus 10 percent interest from the date of judgment. Davillier timely appealed.

## DISCUSSION

Davillier argues that the trial court erred by ordering her to pay Downey Nissan $21,352.77 in restitution because the victim's insurer, rather than the victim, requested restitution, and because the amount the trial court ordered her to pay lacked an "adequate factual basis." We review a trial court's restitution order for abuse of discretion, construing the victim's right to restitution "'"broadly and liberally."'" (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*); accord, *People v. Prosser* (2007) 157 Cal.App.4th 682, 686 (*Prosser*).) "'"'Where there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.'"'" (*Millard*, at p. 26; accord, *Prosser*, at p. 686.)

Section 1202.4, subdivision (a), provides in relevant part: "(1) It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime. [¶][¶] (3) The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay . . . the following: [¶][¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (f), which shall be enforceable as if the order were a civil judgment."

3

Section 1202.4, subdivision (f), provides in relevant part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . [¶] (1) The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution. . . . [¶] (2) Determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of a third party. . . . [¶] (3) To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] (A) Full or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible. . . . [¶][¶] (G) Interest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court." (§ 1202.4, subd. (f).)

In support of her first contention, Davillier observes that, under section 1202.4, only the "direct victim" of the crime, not the direct victim's insurer, is entitled to restitution. (See § 1202.4, subd. (k)(2) [defining "victim" to include any "legal or commercial entity when that entity is a direct victim of a crime"]; *People v. Runyan* (2012) 54 Cal.4th 849, 856 ["it is established that a statute 'permitting restitution to entities that are "direct" victims of crime [limits] restitution to "entities *against which* the [defendant's] crimes had been committed,"'" which are entities that are the "'"immediate objects of the [defendant's] offenses"'"]; *People v. Busser* (2010) 186 Cal.App.4th 1503, 1509 ["[i]nsurance companies that 'suffer[ ] the consequences of crime only by reimbursing the crime-related losses of their policyholders [do] not reasonably fall within [the] definition [of direct victims]'"].) Davillier argues that Downey Nissan, not its

insurer, was the direct victim in this case, and therefore the trial court should not have ordered restitution in response to the insurer's request.

Had the trial court ordered Davillier to pay restitution to Downey Nissan's insurer, Davillier's argument might have had merit. But the trial court ordered Davillier to pay restitution to Downey Nissan, in an amount requested by the prosecutor, based on a letter from Downey Nissan's insurer. Nothing in section 1202.4 prohibits making an award to a crime victim based on evidence from the crime victim's insurer, and Davillier cites no other authority prohibiting such an award. In fact, section 1202.4 requires the trial court to order restitution to the victim "based on the amount of loss claimed by the victim . . . *or any other showing to the court*." (§1202.4, subd. (f), italics added; see *Millard*, *supra*, 175 Cal.App.4th at p. 26 ["[a]t a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss".) And "'"'[s]entencing judges are given virtually unlimited discretion as to the kind of information they can consider'"'" in determining victim restitution." (*People v. Phu* (2009) 179 Cal.App.4th 280, 283; accord, *People v. Baker* (2005) 126 Cal.App.4th 463, 470.)

Davillier's second contention, that the amount of the trial court's restitution order lacked an adequate factual basis, also lacks merit. "'In determining the amount of restitution, all that is required is that the trial court "use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious."'" (*Prosser*, *supra*, 157 Cal.App.4th at p. 690; accord, *Millard*, *supra*, 175 Cal.App.4th at p. 26; see *People v. Giordano* (2007) 42 Cal.4th 644, 663-664 ["while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the . . . victim's economic loss"].) The People have the initial burden at the restitution hearing of making a prima facie showing of the amount of the victim's loss, after which the burden shifts to the defendant to demonstrate that the amount of the loss is other than what the People claim. (*Millard*, at p. 26; accord, *Prosser*, at p. 691.)

At the restitution hearing, the trial court agreed with Davillier that Downey Nissan was entitled to the amount of the value of the car she took, reasoned that the car's value was "whatever someone is willing to pay for it," and found that Davillier was willing to pay $22,418.63.[2] The court then ordered restitution at the lower amount of $21,352.77, as requested by the People, based on the letter from Downey Nissan's insurer.[3] Even assuming some "methodological imprecision," and the possibility of other, perhaps more accurate ways of calculating Downey Nissan's loss, the trial court's method for determining the amount of restitution that would make Downey Nissan whole was not irrational, arbitrary, or capricious. (See *Giordano*, *supra*, 42 Cal.4th at p. 637 ["[d]espite the trial court's methodological imprecision, defendant has not shown that the amount of restitution ordered was an abuse of the trial court's discretion"].) As the court stated in *People v. Akins* (2005) 128 Cal.App.4th 1376 (*Akins*), "it is irrelevant that there may be other reasonable ways of calculating [the victim's loss], or even whether this court would have selected the method adopted by the trial court if we had determined the restitution amount in the first instance. Instead, we may reverse the trial court's order only if we determine that the method the court adopted was arbitrary, capricious, or irrational. This we cannot do, because there is a rational basis for using the formula the court adopted." (*Id.* at p. 1389.) Because Downey Nissan was entitled to the "replacement cost of like property" (§ 1202.4, subd. (f)(3)(A)), the trial court rationally and reasonably began by looking to what someone (i.e., Davillier) in the same geographical market, at the same time, paid for the (very) same car. (See *People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1177 ["restitution is to be based on the replacement cost of a *like* item"]; *People v.*

[2] This figure presumably comes from the installment sales contract Davillier entered into with Downey Nissan, which the prosecutor marked for reference at the preliminary hearing. In any event, Davillier does not question the evidentiary support for this finding.

[3] Though Davillier suggests in passing that the $21,352.77 figure is not supported by sufficient evidence, she concedes, as she did before the trial court, that the insurance company specified this amount in its letter. Davillier did not object to the trial court's consideration of the letter at the restitution hearing, and does not argue on appeal that the trial court erred in considering the letter.

*Thygesen* (1999) 69 Cal.App.4th 988, 995 [appropriate evidence of replacement cost for used cement mixer would include "the age of the mixer, its original price, and what it would cost to replace it with a mixer of like type and age"].)  The court then rationally and reasonably adjusted that amount downward, in consideration of the letter from the insurance company.  And Davillier does not dispute that Downey Nissan was entitled by statute to the 10 percent interest.  (See § 1202.4, subd. (f)(3)(G).)

As she did in the trial court, Davillier recites the sales history of the car before and after she contracted to buy it from Downey Nissan, but again she does not suggest which sale price in that history reflects the amount that would make Downey Nissan whole.  Nor does the record indicate that she introduced into evidence or presented to the trial court any of her purported "proof" of that history.  Davillier did not demonstrate, and has not demonstrated, that Downey Nissan's loss is other than what the court determined it was.  (See *Millard*, *supra*, 175 Cal.App.4th at p. 26.)

Finally, citing the "doctrine of mitigation of damages" in contract law, Davillier argues that Downey Nissan had a duty to mitigate its loss by retrieving the car from the towing company that possessed the car after she did, and she suggests the trial court should have reduced the amount of restitution (by some unspecified amount) to reflect the loss Downey Nissan could have avoided.  (See *Agam v. Gavra* (2015) 236 Cal.App.4th 91, 111 ["'[t]he doctrine of mitigation of damages holds that "[a] plaintiff who suffers damage as a result of . . . a breach of contract . . . has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided"'"].)  Davillier, however, forfeited this argument by failing to raise it before the trial court.  (See *Prosser*, *supra*, 157 Cal.App.4th at p. 689 [defendant forfeited argument that failure to itemize the value of stolen items in restitution order was error because she did not raise the issue at the restitution hearing].)  Moreover, Davillier cites no authority suggesting that the doctrine of mitigation of damages applies to restitution under section 1202.4.  (See *Prosser*, at p. 690 [restitution order need not "reflect the amount of damages recoverable in a civil action"]; accord, *Akins*, *supra*, 128 Cal.App.4th at p. 1382.)

**DISPOSITION**

The order is affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.

GARNETT, J. [*]

_____

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.