Filed 9/26/16  P. v. Arce CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

|  |  |
|---|---|
| THE PEOPLE, | C080836 |
| Plaintiff and Respondent, | (Super. Ct. No. S15CRF0052) |
| v. | |
| OLGA NAYELI PENA ARCE, | |
| Defendant and Appellant. | |

Defendant Olga Nayeli Pena Arce pled no contest to various counts related to driving under the influence of alcohol, including gross vehicular manslaughter while intoxicated.  On appeal, she contends the trial court erred in the amount it ordered her to pay in direct victim restitution, in that the amount payable to the decedent's family included amounts the family *received* from two third parties.  Acknowledging she did not object to the restitution order in the trial court, defendant also argues her trial counsel was ineffective.  We agree trial counsel was ineffective and order the restitution order modified.

1

BACKGROUND

After spending the early morning hours drinking with her friends, defendant was driving approximately 93 miles per hour, lost control of her car, and crashed into a retaining wall. Passenger Aimee Campos was fatally injured in the crash, and both defendant and passenger Wayne Walker sustained serious injuries. Two and one-half hours after the collision, defendant's blood-alcohol content measured at 0.12 percent.

Defendant pled no contest to gross vehicular manslaughter while intoxicated, driving under the influence of alcohol and causing injury, and driving with a 0.08 percent blood-alcohol content causing injury, and she admitted she had personally inflicted great bodily injury upon Walker and had caused death or great bodily injury to more than one victim. The trial court sentenced defendant to an aggregate term of seven years eight months.

The Campos family filled out a "VICTIM IMPACT STATEMENT" in which they claimed "[m]onetary [l]osses" totaling $25,771.29. On a line for "Expenses resulting from stolen or damaged property," they claimed $21,111.01 and added the following explanation: "(FUNERAL EXPENSE) INCLUDING LIFE INSURANCE." On a line for "Wages or profits lost due to injury or time spent as a witness," they circled the word "Wages," claimed $2,016.28, and added the following explanation: "(A MONTH NO PAY) DAUGHTERS DEATH FUNERAL." And finally, on a line for "Actual and reasonable attorney fees and other costs of collection accrued by a private entity on your behalf," they claimed $2,644.

To the victim impact statement, the Campos family attached four documents. The first was a statement of goods and services from McFarlane Mortuary showing a total cost of arrangements amounting to $10,099.50. The second was a copy of a check for and record of a deposit of $10,004.93, which was identified as "AIMEE'S LIFE INSURANCE THROUGH MOTHER'S EMPLOYER." The third was an invoice from Cornerstone Monuments showing the cost of a grave marker as $506.58. And the fourth

was a letter and check from Harrah's in the amount of $500, made payable to McFarlane Mortuary, "to assist . . . with funeral expenses."

The figures shown on the four documents attached to the victim impact statement add up to $21,111.01, which is the amount the Campos family entered on the line of the statement with the explanatory note, "(FUNERAL EXPENSE) INCLUDING LIFE INSURANCE." Also, a notation on the statement from the mortuary shows that the $500 check from Harrah's was applied against the $10,099.50 cost of arrangements.

Upon being asked if there was any opposition to the restitution request for $25,771.29, defense counsel answered, "No." Accordingly, the trial court ordered direct victim restitution in that amount to the Campos family. After the trial court made the order, defense counsel indicated she was not opposing the request for attorney fees, if they were incurred, but she did not see an attachment supporting it. The court put that issue over to be addressed at the next hearing. At the next hearing, defense counsel stated she was satisfied with the documentation received for the attorney fees, which was the only question she had regarding restitution. The trial court held a third restitution hearing, at which defense counsel detailed the restitution sought by the Campos family, "it's 21,100, looks like, and eleven -- and one cent for funeral expenses. Then there is wage loss for $2,016.28 -- 28 cents. . . . [¶] . . . [¶] And then there is attorney's fees which were verified, in the amount of $2,644, so total restitution requested was $25,771.29, and none of that's opposed." The trial court struck the prior order and imposed "the total amount, which is unopposed, is $25,771.29 plus a 10 percent administrative fee of $2,577.13."

DISCUSSION

Defendant contends the trial court imposed an unauthorized sentence by ordering direct victim restitution in the amount of $25,771.29, an amount which included payments of $10,004.93 from a life insurance policy and $500 from the victim's

3

employer. The People claim the error is forfeited because defendant failed to object. Defendant argues if the claim is forfeited, then she received ineffective assistance of counsel. We find the claim forfeited for failure to object but we agree with defendant that counsel's failure to object to the direct victim restitution award, which clearly included payments *received* of approximately $10,500, was ineffective assistance of counsel.

A crime victim is entitled to restitution for economic losses caused by a defendant's criminal conduct. (Cal. Const., art. I, § 28, subd. (b); Pen. Code,[1] § 1202.4, subds. (a)(1) & (f).) The amount of restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(3).) "Thus, restitution not only requires a crime, a victim, and an economic loss, but the victim must have *actually* suffered the economic loss because of the criminal conduct." (*People v. Busser* (2010) 186 Cal.App.4th 1503, 1508, italics added.) "The Legislature intended restitution to 'restore the economic status quo' by returning to the victim ' "funds in which he or she has an ownership interest" ' following a criminal conviction. [Citation.] However, 'a restitution order "is not . . . intended to provide the victim with a windfall. [Citation.]" ' [Citation.] Therefore, 'restitution of the victim is only ordered if the victim suffers economic loss.' [Citation.] . . . Victims are only entitled to an amount of restitution so as to make them whole, but nothing more, from their actual losses arising out of the defendants' criminal behavior. [Citation.]" (*Busser*, at p. 1510.) "[V]ictim restitution is limited to economic loss but is unlimited in the amount that can be ordered." (*People v. Harvest* (2000) 84 Cal.App.4th 641, 649.)

---

[1] Undesignated statutory references are to the Penal Code.

When calculating the amount of restitution, the court must use a " 'rational method that could reasonably be said to make the victim whole.' " (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.)  The amount of restitution must have a " 'factual and rational basis.' " (*Id*. at p. 499.)  "We review a restitution order for an abuse of discretion." (*Id*. at p. 498.)  "The abuse of discretion standard is 'deferential,' but it 'is not empty.' [Citation.]  '[I]t asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].'  [Citation.]  Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the . . . victim's economic loss.  To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*People v. Giordano* (2007) 42 Cal.4th 644, 663-664.)

A

*Forfeiture*

Initially, we reject defendant's contention that the restitution award was unauthorized.  As the People correctly argue, defendant is not challenging whether direct victim restitution could or should have been awarded, but rather she is challenging the amount of that award.  "[T]he 'unauthorized sentence' concept constitutes a narrow exception to the general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 354.)  The direct victim restitution in question was not unauthorized in a jurisdictional sense.  Generally, a sentence is " 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case.  Appellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record." (*Ibid*.)  The direct victim restitution award does not meet

5

this definition because the amount could be lawfully imposed under circumstances showing that amount of economic loss to the victim, a fact-bound determination. "In essence, claims deemed [forfeited] on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner," (*ibid.*) which is exactly what happened here. Accordingly, the forfeiture exception does not apply. (See *People v. McCullough* (2013) 56 Cal.4th 589, 599.) Defendant has forfeited this claim by failing to object at the sentencing hearing, despite multiple opportunities to do so.

B

*Ineffective Assistance Of Counsel*

"When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. . . . On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

"Section 1202.4 does not, by its terms, require any particular kind of proof. However, the trial court is entitled to consider the probation report, and, as prima facie evidence of loss, may accept a property owner's statement made in the probation report about the value of stolen or damaged property." (*People v. Gemelli* (2008) 161

6

Cal.App.4th 1539, 1542-1543.) "Thus, a victim seeking restitution . . . initiates the process by identifying the type of loss [citation] he or she has sustained and its monetary value." (*People v. Fulton* (2003) 109 Cal.App.4th 876, 886.) " 'When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount.' (*People v. Foster* [(1993)] 14 Cal.App.4th [939,] 947.) Absent a challenge by the defendant, an award of the amount specified in the probation report is not an abuse of discretion. (*People v. Pinedo* (1998) 60 Cal.App.4th 1403, 1406-1407.)" (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048.)

Here, the record is clear that the cost for funeral services was $10,099.50 and the cost of the marker was $506.58. The record is equally clear that there were payments to the family or on the family's behalf of $500 from Harrah's and $10,004.93 in life insurance benefits. The Campos family was only entitled to receive restitution for economic *losses*. The monies received by the family from third parties are not economic losses sustained by the family, and are therefore not a valid part of the restitution order. The family is not entitled to receive restitution from defendant for those amounts. The victim impact statement and attachments make clear the request for restitution included some $10,000 that was not for economic losses, but rather for benefits received. The attachments were included with the victim impact statement and the probation report. There were three hearings discussing restitution. Defense counsel objected to the award of attorney fees included in the impact statement, indicating it was unclear what the

supporting documentation for that award was. We can discern no rational reason why counsel would have failed to object to the inclusion of the payments from Harrah's and

7

Aetna Life Insurance in the restitution award.[2] It is equally clear that this failure was prejudicial. A restitution award is limited to economic losses sustained by the victim. A contribution toward funeral expenses and the payment of life insurance benefits are not economic losses. The victim impact statement and supporting documentation submitted by the Campos family support a total award of direct victim restitution in the sum of $14,766.36, consisting of the following: (1) $9,599.50 for the cost of arrangements with the mortuary; (2) $506.58 for the grave marker; (3) $2,016.28 for lost wages; and (4) $2,644 for attorney fees. Restitution for the mortuary arrangements is limited to $9,599.50 because the evidence shows that $500 of the total cost was paid by means of a check from Harrah's made payable directly to the mortuary that the mortuary credited against the total due. Thus, the Campos family never suffered an "economic loss" for this $500.

## DISPOSITION

The judgment is modified reducing the direct victim restitution award to the Campos family to $14,766.36. The trial court is directed to prepare an amended abstract

of judgment and minute order and forward a copy to the Department of Corrections and Rehabilitation and to the State Bar of California.

---

[2]    In a footnote, the People state: "[A] supervisor in the Probation Department confirmed that the amounts received from Harrah's ($500) and Aetna ($10,004.93) were included in the calculation of the family's expenses. He advised that the superior court directs the department to include these amounts in all restitution calculations involving a deceased victim and that the amounts are included in direct victim restitution in all similar cases." As the People note, these matters are not included in the record. However, assuming this is true, we cannot understand why the superior court would have a policy directing the inclusion of benefits paid to the victim as part of the claim for restitution. Such amounts are plainly not proper restitution.

8

                                        /s/
                                        Robie, J.


We concur:


/s/
Hull, Acting P. J.


/s/
Hoch, J.